MATTER OF C——

In DEPORTATION Proceedings

A-2471655

*Decided by Board March 28, 1960*

Deportability—Based on conviction for crime—Effect of *coram nobis* action voiding conviction *ab initio.*

(1) Judgment by New York court on October 25, 1957, in *coram nobis* action vacating respondent's conviction in 1919 for grand larceny, second degree (one of two crimes which resulted in his deportation in 1955), is regarded as voiding the conviction *ab initio* since it is predicated upon findings that respondent had been deprived of rights guaranteed by the Sixth Amendment.

(2) Nevertheless, the decree voiding the conviction is effective only on and after October 25, 1957. It does not require treating the conviction as non-existent prior to October 25, 1957; and it does not permit respondent to attack the deportation order executed on February 8, 1955, which was clearly valid on that date.

CHARGES:

Order: Act of 1952—Section 242(f) [8 U.S.C. 1252(f)]—Unlawful reentry after deportation under 8 U.S.C. 1251(a)(4).

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(17)—Arrested and deported, no permission to reapply.

Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(20)—No immigrant visa.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(9)—Convicted of crime—Unlawfully entering a building.

BEFORE THE BOARD

**Discussion:** On March 3, 1959, this Board approved the special inquiry officer's order of deportation. Thereafter counsel filed a motion for reconsideration and on June 9, 1959, we granted the motion and reopened the hearing. The case is now before us on appeal from the special inquiry officer's decision of November 4, 1959, granting voluntary departure, denying all other relief, and directing that the respondent be deported if he fails to depart voluntarily.

The respondent is a 61-year-old married male, native and citizen of Italy, who states that he was lawfully admitted to the United

611

States for permanent residence on August 18, 1905. He was deported from this country on February 8, 1955, and last entered the United States about March 1956 without inspection. At that time he intended to remain indefinitely; he did not have an immigrant visa; and he had not been granted permission to reapply after arrest and deportation.

The issues to be determined are whether the respondent is deportable, and whether he is eligible for discretionary relief in addition to voluntary departure. For the reasons hereinafter stated, we hold that the respondent is deportable and that discretionary relief, other than voluntary departure, cannot be granted in this proceeding.

In the first proceeding, which culminated in the respondent's expulsion on February 8, 1955, he was found deportable under 8 U.S.C. 1251(a)(4) because of a conviction in 1917 for unlawfully entering a building, and a conviction in 1919 for grand larceny, second degree. After a hearing on counsel's motion *coram nobis* in the criminal proceeding relating to the 1919 conviction, the court entered an order on October 25, 1957, granting counsel's motion to vacate the plea and sentence imposed. The respondent then pleaded not guilty. On April 22, 1959, the 1919 indictment was dismissed. On the same date, a 1918 indictment was dismissed but it was not one of the convictions on which the respondent's deportation was predicated.

The first lodged charge is based on the allegation that the respondent is deportable because he was excludable in March 1956 under 8 U.S.C. 1182(a)(17) as an alien who had been arrested and deported and who did not have permission to reapply for admission to the United States. In this proceeding, the respondent conceded that he had been deported from the United States on February 8, 1955, and that he had not received permission to reapply for admission to the United States. We said in our previous order that counsel had not cited any judicial or other authority for his contentions that the granting of the motion *coram nobis* completely removed the conviction from the record and that this differed from an absolute executive pardon. None of the cases now cited by counsel indicates to us that the granting of a motion *coram nobis* has greater obliterating effect than a pardon. As stated in *Ex parte Garland*, 71 U.S. 333, 380 (1866), "* * * when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense."

Counsel is correct, however, in his contention that a conviction is void, as contravening the Sixth Amendment to the Constitution, where the defendant was not represented by counsel and had not competently and intelligently waived this right (*United States* v. *Morgan*, 346 U.S. 502 (1954); *Johnson* v. *Zerbst*, 304 U.S. 458 (1938)). Exhibit R-3 shows that on October 25, 1957, the judge

hearing the motion *coram nobis* found, with respect to indictment 34,469-A of the year 1919, that the respondent was not represented by counsel at the trial, and that the trial court had not informed him of his right to such representation. In view of this finding and in accordance with the decisions cited, the respondent's 1919 conviction was void. In *United States* v. *Morgan*, 222 F.2d 673 (C.A. 2, 1955), it was said by way of dictum (p. 674, note 3): "Of course, the conviction is not void in the sense that the defendant may disregard the conviction before it has been judicially declared invalid."

In referring to the retroactive effect of *coram nobis*, counsel has cited certain cases holding that a man serving a sentence as a second offender, whose prior conviction was then set aside, may thereafter be resentenced as a first offender on the sentence being served. However, we actually do give retroactive effect to the order revoking the 1919 conviction. When the respondent entered the United States in March 1956, he was, in fact, excludable under 8 U.S.C. 1182(a)(9) because of the 1917 and 1919 convictions, the 1919 conviction not having been removed until October 25, 1957. Nevertheless, the respondent is not charged in this proceeding with being excludable in March 1956 because of the 1919 conviction. On the authority of the Supreme Court's decisions in *United States* v. *Morgan* and *Johnson* v. *Zerbst, supra*, we hold that the respondent is to be regarded as never having been convicted of the 1919 offense. In other words, as of October 25, 1957, the 1919 conviction was wiped out *ab initio*.

While the conviction has now been removed *ab initio*, and although it does not seem that the respondent could be deported under 8 U.S.C. 1251(a)(4) upon a new proceeding instituted at this time, there still remains the question as to the legal effect of the respondent's deportation on February 8, 1955. On that date, he was, in truth and in fact, an alien who had been convicted of two crimes involving moral turpitude and he was actually subject to deportation under 8 U.S.C. 1251(a)(4). Counsel asserts that most of the previous cases in which attempts were made to attack the validity of deportation orders after they had been executed involved a change in the interpretation of the law. He contends that the respondent's case involved a change of facts and that it is distinguishable for that reason. However, he has cited no case in which there was a change of facts and the executed order of deportation was considered a nullity.

We do not perceive any logical reason why, following deportation, one rule should be followed where a change of facts thereafter occurred and another rule where there subsequently took place a change in the judicial construction of the law. If anything, it would seem that the case would be stronger on behalf of the alien who had been erroneously deported because of a mistaken interpretation of the law than in the case of this respondent whose deportation was strictly in

613

accordance with the law and facts as they existed at the time of deportation.

A statement was quoted by counsel from section 522 of the Civil Practice Act of New York which permits the making of a motion to set aside a final judgment for error in fact not arising upon the trial. However, the accomplished deportation here is not a judgment and counsel himself does not allege that there was an *error* in fact, but contends there was a *change* of fact. Section 522 is entirely irrelevant to this respondent's case and the same is true with respect to Federal Rules of Civil Procedure 59 and 60, Title 28, United States Code.

Counsel has sought to draw an analogy between the respondent's case and cases in which a marriage or naturalization has been annulled or revoked *ab initio*. Apparently counsel claims that the invariable rule was to deport aliens who entered the United States on the basis of such marriages or naturalizations. Although some aliens have been deported under the *ab initio* doctrine, we did not apply the doctrine blindly and the question of whether such an alien should be deported depended upon the facts of the particular case. For example, the administrative interpretation of the 1937 act, as indicated in *Matter of B——*, 3 I. & N. Dec. 102, 104 (1947), and the specific language of 8 U.S.C. 1251(c) show that deportation does not follow in every case where the marriage is annulled retroactively to the date of marriage. We held that the aliens were not deportable in *Matter of B——, supra*, and in *Matter of M——*, 3 I. & N. Dec. 25 (1947). Revocation of naturalization also does not necessarily result in deportation of that person or his wife or minor child (*Matter of C——*, 3 I. & N. Dec. 275 (Atty. Gen., 1950); *Matter of P——*, 4 I. & N. Dec. 373 (1951); 8 U.S.C. 1451; 8 CFR 101.1(j)). Since there was no invariable rule that deportation must follow under the *ab initio* doctrine, we reject counsel's contention that this doctrine requires us to hold that the respondent was erroneously deported in 1955.

To summarize, we hold that on and after October 25, 1957, the respondent's 1919 conviction must be considered as having been revoked *ab initio*, but we are not persuaded that the conviction must now be considered as nonexistent on February 8, 1955, when the respondent was deported. The warrant of arrest which resulted in that deportation was served on the respondent on August 6, 1953, and deportation did not occur until February 8, 1955. No reason has been suggested for the respondent's failure to institute the *coram nobis* proceeding prior to his deportation, and he made no attempt to attack the validity of the deportation order through judicial proceedings. Where an alien thus sleeps on his rights and deportation has been accomplished, we see no reason why he should then be permitted to challenge the validity of the executed warrant of deportation. The

situation is somewhat similar to the doctrine of *res judicata* which requires a defendant to present all his defenses at the time of trial or be foreclosed from subsequently asserting them.

The following cases have established the rule that after deportation has been accomplished the alien will not be permitted to attack the validity of that deportation order in a subsequent expulsion or exclusion proceeding (*United States ex rel. Steffner* v. *Carmichael*, 183 F.2d 19 (C.A. 5, 1950), cert. den. 340 U.S. 829; *Daskaloff* v. *Zurbrick*, 103 F.2d 579 (C.C.A. 6, 1939); *United States ex rel. Koehler* v. *Corsi*, 60 F.2d 123 (C.C.A. 2, 1932); *Matter of S——*, 3 I. & N. Dec. 83 (1949); *Matter of K——*, 3 I. & N. Dec. 605 (1949); *Matter of P——*, 3 I. & N. Dec. 818 (1950); *Matter of C——R——*, 4 I. & N. Dec. 126 (1950); *Matter of R——*, 4 I. & N. Dec. 173 (1950)). We hold that these decisions are controlling in the respondent's case and that he cannot, in this proceeding, attack the validity of the executed order of deportation.

There was quoted by counsel, with the emphasis indicated, the following sentence appearing on page 20 of *United States ex rel. Steffner* v. *Carmichael, supra:* "Where an alien has been deported from the United States pursuant to a warrant of deportation, we do not think it permissible to allow a collateral attack on the previous deportation order in a subsequent deportation proceeding, *unless we are convinced that there was a gross miscarriage of justice in the former proceedings.*" There, the contention of the alien was that the first deportation order in 1936 was illegal and void *ad initio*. Since the court was of the opinion that Steffner could *not* attack the previous deportation order, the language which counsel emphasized was dictum. The statutory provision, under which Steffner was deported, was subsequently construed by the Supreme Court in another case in such a way that Steffner would not have been deportable. In the cited case, the Court of Appeals said that if it conceded that the original order of deportation should be examined, Steffner would not be in any better position because it was of the opinion that the original order was valid when entered. As we have previously indicated, the original deportation order against this respondent was clearly valid at the time it was entered. Hence, the prior deportation of this respondent was obviously not "a gross miscarriage of justice," and under the *Steffner* decision cannot now be attacked.

In discussing *United States ex rel. Koehler* v. *Corsi, supra*, counsel stated that when the findings of fact have been outmoded, the law of the case should be reexamined and set aside. That decision does not show whether the alien claimed there had been an error of fact or of law. In the first proceeding, the alien filed a petition for a writ of *habeas corpus* but the District Court's decision was adverse to him and he later withdrew his appeal from that decision. In the

subsequent exclusion proceeding, where he attempted to show that his previous deportation was unlawful, the court said that the law of the case became fixed when the decision of the District Court became final and it was then too late to attack the deportation as not in pursuance of law. In *Matter of R———*, 3 I & N. Dec. 605, and in *Matter of P———*, 3 I & N. Dec. 818, both of which were cited above, there were statements that the law of the case becomes fixed at the time of deportation. However, we do not base our decision on any such concept but solely on the primary proposition for which all of the cited cases stand, that is, that an alien who has been deported will not be permitted to attack the validity of that deportation order in subsequent proceedings. The law of the case doctrine arises when a court has rendered a decision. Hence, it did arise in the *Koehler* case but does not appear to be pertinent in this respondent's case since the validity of the previous deportation order was not passed upon by any court.

Although the doctrine of law of the case is technically not applicable here, the situation is somewhat analogous. A certain finality does attach when a warrant of deportation has been executed by the expulsion of the alien. The question of whether an alien is or is not deportable should not be subject to relitigation after deportation has been accomplished. At that point, judicial review would no longer be possible because the case would be moot. Similarly, the regulations [8 CFR 3.2, 3.3(a) and 3.4] provide that departure prior to taking an appeal shall constitute a waiver of the right to appeal; that departure after making a motion to reopen or reconsider is to be understood as a withdrawal of the motion; and that departure subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal.

*Daskaloff* v. *Zurbrick, supra*, is particularly pertinent to the respondent's case. There, the alien was deported in 1921 on the ground that she was a prostitute and she reentered the United States in 1928. Later a deportation proceeding was instituted which resulted in the issuance of a warrant of deportation. In the subsequent *habeas corpus* proceeding, the alien claimed that the accusations made against her in the first deportation proceeding were untrue. The court said that irrespective of the guilt or innocence of the alien of the charge upon which she was first deported, the inquiry under the statutory provision then in effect was solely whether the alien had, in fact, been deported as a prostitute. The court also said that the alien could not collaterally attack the validity of the prior proceedings. Hence, this case did not involve a change in the interpretation of the law but related to an effort on the part of the alien to show that the facts were not as they had been found originally.

For the reasons stated above, we hold that the respondent is pre-

cluded in this proceeding from attacking the validity of the executed order and warrant of deportation. This disposes of counsel's contention concerning the first lodged charge with the exception of his argument that the respondent did not make an "entry" within the meaning of the immigration laws when he returned to the United States in March 1956. We turn now to this latter contention which is also asserted as a reason why the other three lodged charges should not be sustained.

Counsel's argument is that the respondent's departure from the United States on February 8, 1955, was involuntary because he was deported at that time and that his return in March 1956 should, therefore, not be considered as constituting an entry. This is exactly the same argument that was advanced and rejected by this Board in *Matter of S——*, *supra* (3 I. & N. Dec. at pages 93–94). The position of the Board was passed upon and upheld in the subsequent judicial proceedings in the same case—*United States ex rel. Steffner v. Carmichael, supra.*

In connection with this contention, counsel also cited *Delgadillo v. Carmichael*, 332 U.S. 388 (1947), in which the court held that an alien whose presence in the foreign country occurred because his vessel had been torpedoed did not make an "entry" upon his return to the United States. Counsel also stated that the respondent's position was made "crystal clear" by the decision in *Schoeps v. Carmichael*, 177 F.2d 391 (C.A. 9, 1949). While the *Delgadillo* decision did establish that not every arrival of an alien in the United States constitutes an "entry" for immigration purposes, the case of *Schoeps* is not of assistance to the respondent since that alien was held to have made an entry upon returning from a visit of a few hours in Mexico.

Counsel devoted a considerable part of his brief to his argument that the respondent did not make an entry and he cited a number of judicial and administrative decisions. The Immigration and Nationality Act, which became effective on December 24, 1952, contains a definition of the term "entry" [8 U.S.C. 1101(a)(13], but the word had not been defined in the prior immigration laws. All but one of the decisions cited by counsel had been rendered prior to December 24, 1952. The one exception is *Savoretti v. United States ex rel. Pincus*, 214 F.2d 314 (C.A. 5, 1954), but even there the deportation proceeding had been instituted prior to December 24, 1952, and the case was decided under the prior legislation [section 19(a) of the Immigration Act of 1917; 8 U.S.C. 155(a), 1946 ed.].

Since the word "entry" was defined in the Immigration and Nationality Act, it is to that definition we must look and not to the judicial interpretation of "entry" in the cases decided under the prior legislation. We specifically referred to this definition in our order

617

of March 3, 1959, but counsel ignored this. 8 U.S.C. 1101(a)(13) provides as follows:

The term "entry" means any coming of an alien into the United States, from a foreign port or place * * *, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place * * * was not intended or reasonably to be expected by him or his presence in a foreign port or place * * * was not voluntary: *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

The foregoing definition does, of course, take into consideration the judicial construction of the word "entry" which had been announced in the *Delgadillo* and other cases but the term is defined with more exactness. First, it is provided that any coming of an alien *whether voluntarily or otherwise* shall constitute an entry. Then, an exception is made for an alien having a lawful permanent residence if he proves that his departure to a foreign place was not intended or that his presence in a foreign place was not voluntary. Finally, it is provided that this exception shall not apply to a person who had been deported.

The respondent testified that after his deportation he had been in Italy and other countries and that he boarded the vessel upon which he returned to the United States at Nassau, Bahama Islands. When the facts are examined in the light of the definition in 8 U.S.C. 1101(a)(13), it is apparent that in March 1956 there was a voluntary coming of this respondent into the United States from a foreign place (the Bahamas). Due to the fact that the respondent's departure was occasioned by deportation, it is clear from the definition that he cannot avail himself of the one exception mentioned in this statutory provision. Inasmuch as the facts in the respondent's case bring him precisely within the definition, we hold that his return to the United States in March 1956 constituted an "entry" under the immigration laws. Since he had been deported and did not have permission to reapply for admission to the United States, he was excludable in March 1956 under 8 U.S.C. 1182(a)(17) and the first lodged charge is sustained.

In the third lodged charge, it is asserted that the respondent is deportable on the ground that he was excludable at the time of entry under 8 U.S.C. 1182(a)(20) because he did not have an immigrant visa or other entry document. Counsel contends that a waiver of documents should be granted under 8 U.S.C. 1181(b). That statutory provision is limited to *otherwise admissible aliens* who departed temporarily. We have already concluded that the respondent was excludable under 8 U.S.C. 1182(a)(17). Therefore, 8 U.S.C. 1181(b)

cannot be utilized in the respondent's case and we hold that the third lodged charge is sustained.

The second lodged charge is that the respondent is deportable under 8 U.S.C. 1251(a)(2) because he entered without inspection. Counsel contends that this charge should be held inapplicable under *Matter of Y——*, A-7205042, Int. Dec. No. 975 (1959). We held there that a lawful permanent resident of the United States who reentered on several occasions after short absences by claiming United States citizenship could be considered as being within the purview of the first sentence of section 7 of the Act of September 11, 1957 [8 U.S.C. 1251a] provided that lack of documents was waived under the discretionary authority in 8 U.S.C. 1181(b). We have already concluded that 8 U.S.C. 1181(b) cannot be used in this respondent's case and that he was excludable under paragraphs (17) and (20) of 8 U.S.C. 1182(a). Section 7 of the Act of September 11, 1957 is limited to aliens who were otherwise admissible. Accordingly, this relief is not available to the respondent, and the second lodged charge is sustained.

In the fourth lodged charge, it is alleged that the respondent was excludable at the time of entry under 8 U.S.C. 1182(a)(9) because of the conviction for unlawfully entering a building. The record shows only that the respondent was sentenced to the penitentiary. Counsel contends that this was a petty offense within the terms of section 4 of the Act of September 3, 1954 [8 U.S.C. 1182a]. This contention was discussed by the special inquiry officer. The crime of unlawfully entering a building is a misdemeanor under the law of New York and the applicable punishment is imprisonment for not more than one year. The respondent testified that he was imprisoned for 4 months and 20 days. We considered a somewhat similar question in *Matter of C——O——*, A-8946123, Int. Dec. No. 1033 (1959), but that case is distinguishable. We find it unnecessary to determine whether the respondent's 1917 conviction may be classified as a petty offense under 8 U.S.C. 1182a inasmuch as the respondent does not meet its requirement that such an alien must have been otherwise admissible. We hold that the fourth lodged charge is sustained.

The remaining contentions of counsel concerning deportability are without merit and do not require specific discussion. We have concluded above that the four lodged charges are sustained. In his decision of November 4, 1959, the special inquiry officer held that the respondent was not subject to deportation under 8 U.S.C. 1252(f). Since the respondent is deportable on the lodged charges, we need not consider or discuss the charge stated in the order to show cause.

The other issue is whether the respondent is eligible for discretionary relief in addition to voluntary departure which was granted by the special inquiry officer. Counsel contends that the respondent

is entitled to apply for relief under section 5 of the Act of September 11, 1957 [8 U.S.C. 1182b] and to secure a determination of the application prior to departing from the United States. He asserts that section 5 has been used by this Board in proceedings to adjust status under section 245 of the Immigration and Nationality Act [8 U.S.C. 1255], citing *Matter of M——*, A-10256535, Int. Dec. No. 990 (1959). However, that was a decision of the Service and this Board has nothing to do with adjustment of status under 8 U.S.C. 1255. *Matter of G——*, A-8250353, Int. Dec. No. 972 (1959), is inapposite because there the issue arose in exclusion proceedings. *Matter of G——*, A-7444373, Int. Dec. No. 1004 (1959), has no bearing on the issue here. Relief under section 5 of the Act of September 11, 1957 is not available to aliens within the United States except that it could be utilized in preexamination proceedings during the period that procedure was in effect (*Cammarata* v. *Sahli*, 163 F. Supp. 125 (E.D. Mich., 1958); *Matter of DeF——*, A-10547426, Int. Dec. No. 978 (1959)). The latter was a decision of the Attorney General and is controlling in this respondent's case. Accordingly, we hold that he cannot secure determination of an application under section 5 while he is within the United States.

Counsel stated that he was requesting permission to reapply for admission in connection with the 1955 deportation, but the special inquiry officer denied this relief. This matter was not mentioned in counsel's brief to this Board. However, assuming that the respondent's present marriage continues in existence to the time of his application for a visa, it appears that he has been granted permission to reapply for admission after deportation in accordance with 8 CFR 212.2, his marriage to his citizen spouse having occurred on February 28, 1959. The special inquiry officer has granted voluntary departure which is the only additional relief which is appropriate at this time. In view of the foregoing, the appeal will be dismissed.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.