**UNITED STATES ex rel. STEFFNER v. CARMICHAEL, District Director.**

No. 13098.

United States Court of Appeals, Fifth Circuit.

June 21, 1950.

Writ of Certiorari Denied Oct. 9, 1950.

See 71 S.Ct. 67.

Louis A. Sabatino, Miami, Fla., for appellant.

Ernest L. Duhaime, Asst. U. S. Atty., Miami, Fla., for appellee.

Before HOLMES, WALLER, and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from an order dismissing appellant's writ of habeas corpus, wherein he sought to be discharged from the custody of the District Director of Immigration and Naturalization in Miami, Florida.

Appellant is a native of Sweden. He first came to the United States in 1920, and was legally admitted as a resident of New York. In 1932, he was convicted of the crime of petit theft in California. In 1933, he became a member of the Communist Party, and remained in the party for about four months. In 1934, he was convicted of larceny in Illinois. In 1935, he was convicted of knowingly transporting a stolen car from Iowa to California, in violation of Section 408, Title 18 U.S.C.A.[1] In 1936, deportation proceedings were instituted by the District Director of Immigration and Naturalization at San Fran-

---

I. 1948 Revised Criminal Code, 18 U.S.C.A. §§ 2311–2313.

cisco, California, charging appellant with a violation of 8 U.S.C.A. § 155(a), in that he was an alien who was a member of an organization which believed in the overthrow, by force or violence, of the United States Government. He was given a hearing, which resulted in a finding that he was a member of an organization denounced by the statute, and ordered deported. He took no steps to test the validity of the deportation proceedings.

Appellant remained in Sweden from 1936 to 1941. In 1941, he began shipping in and out of the United States as a seaman. On September 26, 1945, he reentered the United States at the port of Boston, Massachusetts, as a member of the crew of a Swedish liner. He deserted his ship, and remained in the United States without a valid immigration visa, and without having secured permission from the Attorney General to apply for readmission. A warrant was issued for his arrest, and deportation hearings thereon were held on June 20, and July 23, 1947, by the Immigration Inspector. The hearings resulted in the issuance of a warrant of deportation, whereby it was concluded that appellant was subject to deportation, in that he was an alien who admitted having committed a felony, or other crime involving moral turpitude, prior to his entry into the United States; that he was an alien who had been arrested and deported in pursuance of law, and to whom proper authority had not been given to reapply for permission to reenter the United States; and that he was an alien who, at the time of his entry into the United States, was not in possession of a valid visa and not exempted from the presentation thereof.

On November 22, 1949, appellant filed a petition for writ of habeas corpus, alleging that the appellee was about to take him into custody and cause his illegal imprisonment. Order to show cause was issued to appellee; he answered on November 23, 1949, stating that he was to take custody of appellant under the above-mentioned warrant of deportation; and he attached to his answer the official record of the deportation hearings. On December 5, 1949, the court ruled that appellant was subject to deportation, and on December 9, 1949, entered a final judgment denying his petition for writ of habeas corpus. Appellant is now at large on bond pending his appeal to this court.

Appellant concedes in his brief that, if his deportation in 1936 was legal and proper, then he is chargeable with violation of the Immigration Act of 1917, as amended, and deportable thereunder, because the law specifically states that an alien must enter the United States with an immigration visa; if deported, he must have permission from the Attorney General to reenter; and he must not have committed a crime involving moral turpitude prior to his entry. Appellee concedes in his brief that appellant's 1947 hearing was not conducted by a hearing examiner appointed under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

The question of primary concern to us is whether or not appellant should be allowed to make a collateral attack in this proceeding on his 1936 deportation order, which he contends was illegal and void *ab initio*. If we do allow such an attack, we must then examine the order ourselves to determine its validity.

■ Where an alien has been deported from the United States pursuant to a warrant of deportation, we do not think it permissible to allow a collateral attack on the previous deportation order in a subsequent deportation proceeding, unless we are convinced that there was a gross miscarriage of justice in the former proceedings. There are numerous cases where aliens have been deported several times, and if in each subsequent case the validity of the previous deportation order had to be determined, there would be no end to the proceedings cast upon administrative agencies.[2]

■ Appellant did not elect to test the validity of his 1936 deportation order. He had his day before the immigration author-

2. United States ex rel. Koehler v. Corsi, 2 Cir., 60 F.2d 123; Daskaleff v. Zurbrick, 6 Cir., 103 F.2d 579.

ities, who decided that he should be deported. There is no showing that his failure to test the validity of this order was due to any cause other than his desire not to do so. Even if we were to concede that we should examine the order entered in his 1936 deportation proceeding, appellant would not be in any better position than he is now, because we are of the opinion that such order was valid when entered, and, since it has not been set aside in any way, it remains valid. At the time appellant was ordered deported, the most authoritative interpretation of the statute in question was a decision rendered by the Court of Appeals for the Second Circuit, in 1933,[3] to the effect that past membership in the Communist Party would support an order of deportation under the Act of October 16, 1918, as amended by the Act of June 5, 1920.[4] A petition for certiorari asking the United States Supreme Court to review this decision was denied in 287 U.S. 607, 53 S.Ct. 11, 77 L.Ed. 528. In 1939, the United States Supreme Court, in Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082, held contra to the Second Circuit's 1933 decision, deciding that the statute required present membership in such a subversive organization, and declined to sanction an order of deportation for Strecker, because his membership had terminated prior to the institution of deportation proceedings. Appellant contends that, since this was the first pronouncement by the Supreme Court on the law under this statute, it must be considered to have been the law in 1936, at the time appellant was first ordered deported. We cannot accede to this contention. If it were true that a change in the interpretation of the law applicable to a cause prosecuted to judgment entitled the party who had been affected by such change to reopen the controversy, lawsuits would not be settled with finality. We are of the opinion that the law as interpreted by the Second Circuit in United States ex rel. Yokinen v. Commissioner, 57 F.2d 707, was the controlling law until the Supreme Court declared it to be different in 1939. This being true, appellant's deportation order was valid when entered in 1936. Cf. Section 137 of Title 8 U.S.C.A., as amended June 28, 1940.

 Appellant insists that the Administrative Procedure Act[5] was applicable to his deportation hearing, and that said hearing was not in compliance with the Act. Appellee admits that the hearing was not conducted by a hearing examiner appointed under the Act. Under the Supreme Court's holding in Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, compliance with the Administrative Procedure Act is necessary in deportation cases.[6] Since the Act was not complied with by the immigration authorities in the determination of the proceedings against the appellant, we find it necessary to reverse the lower court's order and remand the appellant to the custody of the Director of Immigration and Naturalization at Miami, Florida, for the resumption of deportation proceedings in accordance with the requirements of the Federal Administrative Procedure Act. See Miller v. U. S. ex rel. Hunt, 5 Cir., 181 F.2d 363.

Reversed and remanded.

---

3. United States ex rel. Yokinen v. Commissioner, 57 F.2d 707.

4. 8 U.S.C.A. § 137(a) to (e).

5. 5 U.S.C.A. §§ 1001–1011.

6. United States ex rel. Frisch v. Miller, 5 Cir., 181 F.2d 360.