**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-41434

_____


FRANCISCO R. LARA,

Petitioner-Appellee,

versus


E.M. TROMINSKI, District
Director, Immigration and
Naturalization Service;
JANET RENO, U.S. Attorney
General

Respondents-Appellants.


Appeal from the United States District Court
For the Southern District of Texas


*****************************************************

CONSOLIDATED WITH

*****************************************************


_____

No. 98-60091

_____


FRANCISCO LARA-RESENDEZ,

Petitioner,

versus

IMMIGRATION AND
NATURALIZATION SERVICE

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals

July 10, 2000

Before EMILIO M. GARZA, DeMOSS, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This consolidated immigration appeal arises from complex procedural circumstances. The government appeals from the district court's grant of habeas corpus relief to Francisco Lara-Resendez ("Lara") under 28 U.S.C. § 2241. Lara petitions for review of the Board of Immigration Appeals' ("BIA's") denial of his motion to reconsider its denial of his motion to reopen his deportation proceedings. For the reasons discussed below, we vacate the grant of habeas corpus relief and remand with instructions to dismiss for lack of jurisdiction, and we affirm the denial of the motion to reconsider on the merits.

I

Lara, a Mexican national, was admitted to the United States as a resident alien in 1966. In 1986, he was convicted of conspiracy to make a machine gun, in violation of 18 U.S.C. § 371 and

26 U.S.C. § 586(f), and sentenced to twenty-two months in prison. In February 1993, the INS issued an Order to Show Cause, charging Lara as deportable under Immigration and Naturalization Act ("INA") § 241(a)(2)(C). *See* 8 U.S.C. § 1251(a)(2)(C) (1993) ("Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm . . . in violation of any law is deportable"). The Immigration Judge ("IJ") found Lara deportable as charged. Lara withdrew his appeal and was deported to Mexico.

Lara subsequently reentered the United States unlawfully and pled guilty to unlawful reentry after deportation, in violation of 8 U.S.C. § 1326. Lara received a fifteen-month sentence. In 1995, the INS again instituted deportation proceedings by entering a second Order to Show Cause, charging Lara with being deportable pursuant to: 1) INA § 241(a)(1)(B) (8 U.S.C. § 1251(a)(1)(B) (1995)) (allowing deportation for entry into the United States without inspection); and 2) INA § 242(f) (8 U.S.C. § 1252(f)(1995)) (allowing deportation for unlawful reentry into the United States after deportation). Before the IJ, Lara admitted the factual allegations contained in the order to show cause, but contested the § 242(f) charge. He attempted to collaterally attack his prior deportation, claiming that his offense had not been grounds for deportation under § 241(a)(2)(C) (1993). Relying on Fifth Circuit precedent including *Cipriano v. INS*, 24 F.3d 763 (5th Cir. 1994), the IJ held that it lacked jurisdiction over Lara's collateral attack, as Lara had departed the U.S. pursuant to the prior deportation order. Lara conceded deportability under § 241(a)(1)(B). Therefore, the IJ found deportability established on the § 241(a)(1)(B) charge and ordered Lara deported.

Lara appealed to the BIA, claiming that the IJ should have rescinded the 1993 order of

deportation and restored him to his pre-1993 status. In its February 1997 decision, the BIA disagreed with the IJ's blanket holding that jurisdiction did not exist to consider Lara's claim. Noting that the authority relied upon by the IJ related to judicial review by the federal courts, not review within the INS, it found that the BIA had the "right to review" a collateral attack on an order of deportation in a subsequent deportation proceeding "so long as the respondent has demonstrated he suffered a gross miscarriage of justice by being deported." *See Matter of Malone*, 11 I & N Dec. 730 (BIA 1966); *Matter of Farinas*, 12 I & N Dec. 467 (BIA 1967).

The BIA held, however, that it would not review the 1993 deportation order because Lara had not shown that his prior deportation was a gross miscarriage of justice. It first stated that findings of a gross miscarriage of justice are rare and exceptional, noting that the Fifth Circuit had never found such a miscarriage. Second, the BIA emphasized that Lara had failed to contest his deportability during the prior proceedings and had not pursued an appeal. Finally, there was no showing of any impropriety in the 1993 proceedings. The BIA then explained that, even if it were to concede that it should examine the 1993 order, § 241(a)(2)(C) did apply to Lara's 1986 conviction because the making of a firearm, although not enumerated in the statute, was inherently encompassed in the "possessing" or "owning" of a firearm, which were explicitly listed.[1] Lara's appeal was dismissed.

Lara's attorney, Lionel Perez ("Perez") did not inform him of the BIA's decision until after the statutory period for seeking review in this court had expired. Therefore, no petition for review was attempted. Lara retained new counsel, who in April 1997 filed a motion to reopen the

---

[1]     The BIA also denied Lara's motion to remand for clarification, finding that Lara had not alleged any new evidence that could meet the applicable "heavy burden" of showing a likelihood of success on remand.

deportation proceedings on the basis of ineffective assistance of counsel. The BIA denied the motion to reopen, finding that Lara had not complied with the procedural requirements for stating an ineffective assistance claim set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988).

Following the issuance of the BIA decision, Lara was ordered to report for deportation and denied a stay. He surrendered to INS custody. On April 29, 1997—the day before his scheduled deportation—Lara filed a 28 U.S.C. § 2241 petition in the district court. He claimed that the BIA's refusal to consider the merits of the motion to reopen and the scheduled deportation violated his due process rights. The government moved to dismiss the § 2241 petition for lack of jurisdiction. The district court granted a temporary restraining order staying deportation; ultimately, the government agreed to release Lara and stay deportation until the district court's jurisdiction was resolved. Lara then moved to amend his § 2241 petition to include review of the BIA's February 1997 dismissal of his appeal. Lara again claimed that the BIA had erred in finding his conviction fell under § 241(a)(2)(C).

While the district court considered Lara's § 2241 petition, Lara moved the BIA for reconsideration of its denial of his motion to reopen. The BIA denied the motion. It noted that, to the extent to which the motion to reconsider raised entirely new grounds for reopening, it was barred because Lara was only permitted to file one motion to reopen under 8 U.S.C. § 3.2(c)(2) (1997). The BIA also affirmed its finding that Lara had not complied with the *Lozada* requirements for establishing ineffective assistance and declined to modify those requirements. Lara timely petitioned for review of the denial of the motion to reconsider.

The district court subsequently granted Lara's motion to amend his § 2241 petition, and then granted the petition. First, relying on *United States ex rel. Marcello v. District Director*, 634 F.2d

964 (5th Cir. 1981), the district court found that it had jurisdiction over Lara's § 2241 petition because Lara had no t "deliberately bypassed" available review of the February 1997 decision in the Fifh Circuit, but rather had been precluded from doing so by his counsel's ineffectiveness. On the merits, the district court rejected the BIA's February 1997 decision. It held that, as a matter of statutory interpretation, Lara's conviction did not fall under § 241(a)(2)(C) and therefore was not a deportable offense. Because Lara was deported for an offense which was not a basis for deportation, the court held, that deportation represented a gross miscarriage of justice. The district court concluded that the BIA had erred in dismissing the appeal, vacated the February 1997 order, and remanded the case for further proceedings. The court stated that the BIA's refusal to reopen had not been considered as a part of its order. The government timely appealed.

II

We first consider whether the district court had jurisdiction to consider Lara's § 2241 petition. We review the district court's determination of its jurisdiction *de novo*. *See Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 302 (5th Cir. 1999). As Lara was the party seeking to invoke federal jurisdiction, he bears the burden of demonstrating that jurisdiction was proper. *See Stockman v. Federal Election Comm'n.*, 138 F.3d 133, 151 (5th Cir. 1998).

The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") took effect in 1996. *See* IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). It is clear, and the parties agree, that Lara's case is governed by the IIRIRA transitional rules. *See* IIRIRA § 309(a), (c)(1), (c)(4).[2]

---

[2]     The one permanent IIRIRA rule also applicable to transitional rule cases is new INA § 242(g), 8 U.S.C. § 1252(g). The parties on appeal do not contest that, in light of the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 119 S.

§ 106(c) of the INA states: "[a]n order of deportation . . . shall not be reviewed by any court if the alien . . . has departed from the United States after issuance of the order." *See* 8 U.S.C. § 1105a(c) (1994) (repealed 1996). The IIRIRA repealed § 106 of the INA. *See Sofinet v. INS*, 188 F.3d 703, 708 (7th Cir. 1999). However, the transitional rules incorporate § 106(c), 8 U.S.C. § 1105a(c). *See Sofinet*, 188 F.3d at 708 ("Because the transitional rules apply to Sofinet, § 1105a(c) still applies to him."); *Hose v. INS*, 180 F.3d 992, 996 (9th Cir. 1999) (en banc) ("The transitional rules prevent this court from reviewing exclusion orders when the petitioner has departed the country. The transitional rules incorporate 8 U.S.C. § 1105a(c). . . .").

We have previously relied on § 1105a(c) to bar collateral attacks on prior deportation orders after their execution. In *Cipriano*, petitioner was deported in 1975, based on various criminal offenses. *See Cipriano*, 24 F.3d at 763. After deportation to Italy, he reentered without inspection. *See id.* The INS subsequently charged Cipriano with deportability under INA § 241(a)(2) [now § 241(a)(1)(B)] for entry without inspection and denied discretionary relief. *See id.* at 764. While the 1975 deportation barred Cipriano's claim for discretionary relief, Cipriano claimed that he was entitled to relief from the 1975 order because that order was unconstitutional. *See id.* We held that "[o]ur precedents foreclose review of that claim." *Id.* We noted that § 1105a(c) bars review of orders of deportation after departure, and held that this "jurisdictional infirmity" was unaffected by the fact that the 1975 order was allegedly unconstitutional. *Id.*

*Cipriano* dealt with a petition for review. However, the cases it found to preclude Cipriano's claim, *Quezada v. INS*, 898 F.2d 474 (5th Cir. 1990) and *Umanzor v. Lambert*, 782 F.2d 1299 (5th

---

Ct. 936, 142 L. Ed. 2d 940 (1999), § 242(g) is inapplicable to Lara's challenge to a final deportation order. *See also Requena-Rodriguez*, 190 F.3d at 303-04.

-7-

Cir. 1986), dealt with habeas corpus petitions. *See Cipriano*, 24 F.3d at 764. In *Umanzor*, we held that the "command" of § 1105a(c) was "unequivocal." *See Umanzor*, 782 F.2d at 1302. Therefore, we expressly rejected the proposition that § 1105a(c) applied only if the prior "departure" was legally effected. *See id.* (rejecting this proposition because "if the exception is taken to its logical conclusion, any error or procedural defect at any point in the alien's deportati on saga . . . would render the departure illegal. This being so, any later allegation of procedural error by a deported alien would force the district court and the circuit courts to review the entire matter, despite the express determination of Congress that no such reviews should take place."). As Umanzor had departed the country, we were barred from considering the merits of his challenges to his deportation. *See id.* at 1304.[3] *Quezada* followed *Umanzor* under similar facts, expressly affirming *Umanzor*'s holding that § 1105a(c) applied without regard to the lawfulness of the deportation. *See Quezada*, 898 F.2d at 476. We added that Congress "meant what it said when it provided that no court may review a deportation order once deportation has occurred." *Id.* at 477 (internal citation omitted).

Lara's § 2241 petition was plainly a collateral attack on his prior deportation. Lara contended that he suffered a gross miscarriage of justice because he was deported when he was not, in fact, deportable. The BIA had rejected Lara's claim, finding no gross miscarriage in the original proceedings. The district court, in granting Lara's habeas petition, disagreed with the BIA's statutory interpretation. It found that, because Lara had been deported when he was not deportable, this represented a gross miscarriage of justice. Finding that Lara was entitled to have the original deportation order vacated, the district court vacated and remanded the BIA's February 1997 order.

---

[3] We also rejected Umanzor's claim that § 1105a(c), by absolutely barring review of the merits of Umanzor's challenges to his deportation order after his departure, violated the Suspension Clause. *See id.* at 1304.

But *Umanzor*, *Quezada*, and *Cipriano* suggest that the district court lacked jurisdiction to consider Lara's collateral challenge to his prior deportation, and thus his challenge to the BIA's February 1997 order.

There are two Fifth Circuit cases which suggest that, like the BIA, we can review Lara's collateral challenge to his prior deportation if and only if that deportation involved a gross miscarriage of justice. *See Ponce-Gonzalez v. INS*, 775 F.2d 1342, 1345 (5th Cir. 1985)*; United States ex rel Steffner v. Carmichael*, 183 F.2d 19, 20 (5th Cir. 1950). *Steffner* seems of little import, as it preceded § 1105a(c)[4] and did not rely on any statute. *See Steffner*, 183 F.2d 19. *Steffner* held that, in light of the potentially excessive burden on administrative agencies from repeated challenges to prior deportation orders, we would not consider a collateral attack on a prior deportation "unless we are convinced that there was a gross miscarriage of justice in the former proceedings." *Id.* at 20. *Ponce-Gonzalez* did cite § 1105a(c). *See Ponce-Gonzalez*, 775 F.2d at 1345. It noted that Ponce-Gonzalez had waived his right to appeal his initial deportation and departed the country. *See id.* But it then stated that orders of deportation are not subject to collateral attack "at least in the absence of a 'gross miscarriage of justice.'" *See id.* (citing *Steffner,* 183 F.2d at 20).[5]

Recognizing that *Ponce-Gonzalez* preceded *Cipriano* and the other cases discussed above, we assume that federal jurisdiction would exist over Lara's § 2241 petition if Lara could demonstrate that

---

[4]    The INA was enacted in 1952. *See Moralez-Ramirez v. Reno*, 2000 WL 375430 (7th Cir., April 13, 2000), at *1.

[5]    The use of "at least" leaves some doubt whether *Ponce-Gonzalez* intended to establish that we have jurisdiction to consider whether a prior deportation order involved a gross miscarriage of justice, although the analysis in the opinion appears to assume such jurisdiction. If *Ponce-Gonzalez* so holds, it apparently conflicts with *Cipriano*. *Cipriano* did not abrogate (or even discuss) *Ponce-Gonzalez*, although arguably there were grounds on which to do so: *Ponce-Gonzalez*'s reliance on *Steffner*, which preceded § 1105a(c), may have been erroneous.

his prior deportation involved a gross miscarriage of justice. We find, however, that the BIA did not err in deciding that Lara had not demonstrated a gross miscarriage of justice. Therefore, there is no jurisdiction over Lara's § 2241 petition collaterally challenging his prior deportation.

We need not address whether the BIA correctly determined that § 241(a)(2)(C) applied to Lara's conviction for conspiracy to make a firearm. The BIA did not appear to rely on this determination in rejecting Lara's claims of a gross miscarriage of justice.[6] We agree with the reasons given by the BIA for finding that the prior deportation was not a gross miscarriage of justice. First, findings of a gross miscarriage of justice are, as the BIA noted, rare. In fact, the Fifth Circuit has never allowed an immigrant's collateral challenge to his prior deportation order on the basis of a gross miscarriage of justice. *See Steffner*, 183 F.2d at 20 (finding no gross miscarriage of justice); *Ponce-Gonzalez*, 775 F.2d at 1345 (also finding no gross miscarriage of justice in the prior deportation order, and therefore "reject[ing] the attempt to attack" it). Apparently, only two BIA cases have found that a prior deportation order represented a gross miscarriage of justice. *See Malone*, 11 I & N Dec. 730; *Farinas*, 12 I & N Dec. 467. Lara does not point to any cases in other circuits in which, following *Malone* and *Farinas*, collateral attacks have been permitted based on a gross miscarriage of justice. Such claims have, it appears, been consistently rejected. *See Pupek v. INS*, 47 F.3d 899, 902 (7th Cir. 1995) (finding that Pupek was unable to demonstrate that prior proceeding involved a gross miscarriage); *Ramirez-Juarez v. INS*, 633 F.2d 174, 175-76 (9th Cir. 1980) (same); *Soleto-Mondragon*

---

[6] The BIA clearly indicated that the rarity of a gross miscarriage, the lack of any irregularity in the proceedings, and Lara's waivers were a sufficient basis for its finding that no gross miscarriage had occurred. After discussing these factors, the BIA stated, "However, *even if we were to concede* that we should examine the order entered in 1993, the respondent would be in no better position." Only then did the BIA go on to reject Lara's statutory argument. Clearly, the BIA believed that it was not required to reconsider the merits of the 1993 order to dismiss Lara's appeal.

*v. Ilchert*, 653 F.2d 1254, 1255 (9ᵗʰ Cir. 1980) (same)*; Hernandez-Almanza v. INS*, 547 F.2d 100, 102 (9ᵗʰ Cir. 1976) (finding no gross miscarriage and refusing to consider attack to prior exclusion where alien was deported on basis of conviction for possession of marijuana, then reentered without inspection and obtained state court order vacating conviction as of the date it had been entered).  It appears that subsequent BIA cases have also uniformly rejected claims of a gross miscarriage of justice.  *See, e.g.,  In re Beckford*, Int. Dec. 3425 (BIA 2000); *Matter of Duran*, 20 I & N Dec. 1 (BIA 1989); *Matter of Roman*, 19 I & N Dec. 855 (BIA 1988).

The BIA also accurately noted that Lara showed no irregularity in the prior proceedings.  It noted that, in fact, Lara apparently did not contest his deportability in those proceedings.  Finally, it pointed out that Lara withdrew his appeal, choosing instead to be deported.  We have agreed that such waivers are a critical factor in denying claims that deportation proceedings constituted a gross miscarriage of justice.  *See Steffner*, 183 F.2d at 20-21 ("Appellant did not elect to test the validity of his 1936 deportation order.  He had his day before the immigration authorities, who decided he should be deported.  There is no showing that his failure to test the validity of his order was due to any cause other than his desire not to do so."); *Ponce-Gonzalez*, 775 F.2d at 1346-47 (finding no miscarriage of justice where, in initial proceedings, petitioner conceded deportability, did not meet his burden of applying for discretionary relief and advancing relevant facts, waived his right to appeal the IJ's decision, and voluntarily departed the country).[7]  Other courts have gone farther, finding that any collateral attack on a prior deportation proceeding was barred by a waiver of the direct attack.  *See Ramirez-Juarez*, 633 F.2d at 175 ("Petitioners did not appeal the 1977 deportation decision, and voluntarily departed the United States on November 16, 1977.  They consequently waived judicial

---

[7]        The BIA cited to and discussed both *Steffner* and *Ponce-Gonzalez*.

review of that determination and cannot attack it now."); *Hernandez-Almanza*, 547 F.2d at 103 ("Since Almanza chose not to pursue the administrative remedy of appeal to the Attorney General and since he departed the United States after the issuance of his exclusion order, he may not now obtain judicial review of that order.").

It is true that, in *Malone*, the BIA noted that Malone had withdrawn her administrative appeal, and did not discuss this in its finding that Malone had suffered a gross miscarriage of justice. *See Malone*, 11 I & N Dec. at 730. However, given *Steffner*, *Ponce-Gonzalez*, and the intervening circuit court decisions, the omission in *Malone* does not show that the BIA's decision here was an abuse of discretion, *see Toscano-Gil v. Trominski*, 2000 WL 426215, *3-*4 (5ᵗʰ Cir., April 20, 2000) (deciding that abuse of discretion standard should apply to "procedural due process claim" based on BIA's failure to "follow or distinguish precedent") (citing *Diaz-Resendez v. INS*, 960 F.2d 493, 496-98 (5ᵗʰ Cir. 1992)). *See also Beckford*, Int. Dec. 3425 (noting that, in *Matter of Roman*, no showing of a gross miscarriage was made "because the respondent had admitted the allegations and conceded deportability at the prior hearing").

In sum, even if we assume that the district court would have jurisdiction over Lara's § 2241 claim if Lara could demonstrate that his prior deportation involved a gross miscarriage of justice, we find that the BIA did not err in finding that Lara had not made this demonstration.[8] Therefore, the

---

[8] It appears that Lara has also argued, as a claim cognizable under § 2241, that his due process rights would be violated by his instant deportation because his prior deportation was a gross miscarriage of justice. Lara has not shown that there is a freestanding due process right to be free of "gross miscarriages of justice" during the immigration process. In *Ponce de Gonzalez* and *Steffn*er we never stated that a gross miscarriage was necessarily a due process violation. *See Ponce de Gonzalez*, 775 F.2d 1342; *Steffner*, 183 F.2d 19. Moreover, we never went on to actually find a gross miscarriage. *See id.* Nor, apparently, have other circuits. *See supra*. Therefore, the consequences of finding a gross miscarriage of justice are unclear. *Malone* and *Farinas* do not contain any discussion of due process, and do not appear to be based on due process grounds. They

district court lacked jurisdiction to consider Lara's § 2241 petition.[9]

_____

instead appear in granting relief to rely on the BIA's inherent discretionary authority. *See Malone*, 11 I & N Dec. at 732; *Farinas*, 12 I & N Dec. at 472. Therefore, Lara has not met his burden of showing a due process right.

At any rate, even if we assume that there is a due process right to be free of gross miscarriages of justice, that § 2241 jurisdiction exists under it, and that it requires that a subsequent deportation order on an independent and valid ground be vacated if a prior deportation involved a gross miscarriage of justice, for the reasons discussed above, Lara has not shown a violation of that right. Because any constitutional claims asserted by Lara are not cognizable, they do not create jurisdiction over his § 2241 petition. *See Toscano-Gil*, 2000 WL 426215, at *2.

[9] In addressing whether the district court had jurisdiction to consider Lara's § 2241 claim, the parties dispute the meaning of *Requena-Rodriguez*. *See Requena-Rodriguez*, 190 F.3d at 305 ("We conclude that § 2241 habeas jurisdiction continues to exist under IIRIRA's transitional rules in cases involving final orders of deportation against criminal aliens, and that habeas jurisdiction is capacious enough to include constitutional and statutory challenges if those challenges cannot be considered on direct review by the court of appeals."). *Requena-Rodriguez* dealt with the extent to which the IIRIRA repealed § 2241 jurisdiction that had previously existed. *See id.* at 301 ("[T]his court must consider whether jurisdiction to entertain such claims in habeas cases has been limited by AEDPA itself, or by . . . IIRIRA."). In this case, we had a rule that preceded IIRIRA and AEDPA depriving the federal courts of jurisdiction over Lara's claim, either in a petition for review or under § 2241. Clearly, *Requena-Rodriguez* does not create § 2241 jurisdiction here.

Lara claims that the government should be estopped from arguing that the district court lacked jurisdiction under § 2241 because, at some point earlier in the proceedings, it argued that we lacked jurisdiction under IIRIRA § 309(c)(4)(G) to consider a petition for review by Lara. We are especially wary of applying judicial estoppel to create subject matter jurisdiction in the federal courts. *See Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 14 (1st Cir. 1999) ("[C]ourts have been cautioned to give careful consideration to the application of judicial estoppel when subject matter jurisdiction is at stake.") (citing 18 Wright, Miller, & Cooper, Federal Practice and Procedure § 4477, at 784 (1981 and 1998 Supp.)). We reject Lara's judicial estoppel claim because the question of whether § 309(c)(4)(G) would have precluded us from considering a petition for review of the BIA's February 1997 order is irrelevant, given the bar to jurisdiction independent of IIRIRA created by the content of Lara's § 2241 petition. We also note that, in order for judicial estoppel to apply, the inconsistent "party must have convinced the court to accept [its] prior position." *In re: Coastal Plains*, 179 F.3d 197, 206 (5th Cir. 1999). Lara has not satisfied this requirement, because the district court never accepted that § 309(c)(4)(G) would have applied to a petition for review by Lara until after the government had withdrawn that position. Rather, it was Lara who convinced the district court that § 309(c)(4)(G) would have applied.

-13-

III

The other issue before us is whether the BIA erred in denying Lara's motion to reconsider its denial of his motion to reopen proceedings on the basis of ineffective assistance of counsel. As the parties agree, we have jurisdiction to consider the BIA's denial of reconsideration.[10]

There is no statutory provision for reopening; the authority to reopen derives solely from regulations promulgated by the Attorney General. *See INS v. Doherty*, 502 U.S. 314, 322, 119 S. Ct. 719, 116 L. Ed. 2d 823 (1992); 8 C.F.R. § 3.2 (1999). The regulations authorize, but do not require, the BIA to reopen proceedings under certain circumstances. *See Doherty*, 502 U.S. at 322-23. The grant of a motion to reopen is therefore discretionary. *See id.* The attorney general has "broad discretion" to grant or deny such a motion. *Id.*; *see also Pritchett v. INS*, 993 F.2d 80, 83 (5th Cir. 1993) (same). We therefore apply a highly deferential abuse of discretion standard in reviewing the BIA's denial of a motion to reopen. *See Pritchett*, 993 F.2d at 83 ("The standard is whether the Board has acted within the bounds of an abundant discretion granted it by Congress") (internal citation omitted). "[T]he abuse of discretion standard applies to motions to reopen regardless of the

_____

[10] Prior to IIRIRA, it was clear that we had jurisdiction to review the BIA's denial of a motion to reconsider. *See Wellington v. INS*, 108 F.3d 631, 636 (5th Cir. 1997) ("We review denials of motions to reopen for abuse of discretion"); *De Morales v. INS*, 116 F.3d 145, 147 (5th Cir. 1997) (same). The IIRIRA has not removed our jurisdiction. In *Stewart v. INS*, 181 F.3d 587 (4th Cir 1999), the Fourth Circuit considered whether, under the transitional rules, § 1252(g) removed jurisdiction in a petition for review over Stewart's claim that the BIA erred in denying her motion to reopen. The court noted that, in *American-Arab*, the Supreme Court had held that a denial of reconsideration was not subject to § 1252(g). *See id.* at 594 (citing *American-Arab*, 119 S. Ct. at 943). Noting that a motion to reopen is similar to a motion for reconsideration, the court held that Stewart's petition for review was not subject to § 1252(g). *See id.* The court found that it had jurisdiction under the transitional rules to consider Stewart's petition. *See id.* at 595. The Ninth Circuit also has found that the transitional rules do not deprive it of jurisdiction over a motion to reopen where the deportation order was issued under § 241 of the INA. *See Arrozal v. INS*, 159 F.3d 429, 432 (9th Cir. 1998). Therefore, we have jurisdiction over the BIA's denial of reconsideration of its denial of Lara's motion to reopen.

-14-

underlying basis of the alien's request for relief." *Doherty*, 502 U.S. at 323 (internal citation omitted).

Moreover, "motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." *Doherty*, 502 U.S. at 323; *see also Ghassan v. INS*, 972 F.2d 631, 638 (5th Cir. 1992) ("Reopening and reconsideration are disfavored."). "This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien." *Doherty*, 502 U.S. at 323.

A.

In *Matter of Lozada*, 19 I & N Dec. 637, 639 (BIA), *aff'd* 857 F.2d 10 (1st Cir. 1988), the BIA set out three procedural requirements for supporting a claim of ineffective assistance of counsel as a basis for reopening. The BIA required: 1) an affidavit by the alien setting forth the relevant facts, including the agreement with counsel regarding the alien's representation; 2) evidence that counsel was informed of the allegations and allowed to respond, including any response; and 3) an indication that, assuming that a violation of "ethical or legal responsibilities" was claimed, a complaint has been lodged with the relevant disciplinary authorities, or an adequate explanation for the failure to file such a complaint. *See Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 1999); *Lozada*, 19 I & N Dec. at 639.

The BIA gave a detailed explanation for these requirements. First, it noted that "litigants are generally bound by the conduct of their attorneys." *Lozada*, 19 I & N. Dec. at 639 (citing *LeBlanc v. INS*, 715 F.2d 685 (1st Cir. 1983)). Second, the "high standard" announced in *Lozada* was necessary to assess the "substantial number of claims of ineffective assistance of counsel that come before the Board." *Id.* (noting that the requirements would ensure the "essential information" needed to evaluate the claim is provided to the Board). The requirement that former counsel be notified was

-15-

necessary to protect counsel's interests and to deter baseless accusations. *See id.* The requirement regarding disciplinary allegations served both to deter meritless claims and to aid in policing the immigration bar. *See id.*

The BIA reaffirmed and further explained *Lozada* in *In re Rivera*, Int. Dec. 3296 (1996). It noted that the "bar discipline" requirement was necessary in light of the fact that lawyers from any jurisdiction can practice before the immigration courts, while the BIA lacks any comprehensive disciplinary rules. *Id.* It also noted that the requirement protected against collusion between aliens and counsel in which "ineffective assistance" is used to achieve delay in immigration proceedings. *Id.* Finally, it reiterated that the complaint, like the other filings required by *Lozada*, greatly aided the BIA in adjudicating the claim. *See id.* The BIA concluded that the filing of such a complaint, or a reasonable explanation for the failure to do so, was a "relatively small inconvenience" for an alien seeking a new hearing in an over-taxed system. *Id.* Applying *Lozada*, the BIA found that the petitioner's explanation for declining to file a disciplinary complaint was inadequate, and precluded her motion to reopen based on ineffective assistance. *See id.*

In this case, Lara filed a cursory, two-page motion to reopen. The BIA correctly found that Lara had not complied with *any* of the *Lozada* requirements. First, Lara did not submit any affidavit explaining the relevant circumstances and agreement. Second, while Lara had sent a letter to Perez, Lara admittedly filed his motion to reopen before Perez had an opportunity to respond. Third, no disciplinary complaint had been filed, nor any reasonable explanation made for the failure to do so. Lara's motion noted that, when Perez's reply was received, Lara would determine whether a grievance was warranted. In the motion, Lara requested thirty days to file additional documentation. Lara's motion to reopen was filed on April 22, 1997 and the BIA's decision rendered on July 21. Yet Lara

did not use the additional time to correct any of his omissions under *Lozada*. The BIA's decision was correct, and Lara did not file a petition for review.

Instead, Lara filed a motion to reconsider. In conjunction with this motion, Lara complied with the second requirement, submitting a statement from Perez admitting that he had failed to inform Lara of the BIA's February 1997 order before the thirty-day deadline had expired. Lara also claimed that the BIA's decision represented an "overly rigid" application of the first and third *Lozada* requirements. As to the first requirement, Lara claimed it was inapplicable because the obligation to inform him of the outcome of his appeal did not require specific agreement, but rather was inherent in the attorney-client relationship. Lara also claimed that he was justified in declining to file a bar complaint because an isolated omission such as that made by his counsel was not a basis under the Texas bar rules for disciplinary action. Lara argued that, because Perez's actions were not the basis for a disciplinary complaint in Texas, this case did not involve a "violation of ethical or legal responsibilities," as *Lozada* requires to trigger the grievance requirement.

The BIA rejected Lara's claim. It stated that Lara was requesting that the *Lozada* requirements be modified. After briefly discussing Lara's arguments, the BIA noted that it had recently reaffirmed the *Lozada* requirements in *Rivera*. Declining to modify *Lozada*, the court denied Lara's motion for reconsideration.

We find that the BIA did not abuse its considerable discretion in refusing to reconsider its denial of reopening. Numerous other circuits have upheld the *Lozada* requirements. *See Lata*, 204 F.3d at 1241 ("The Board has laid out a comprehensive procedure that a petitioner should follow to support such a claim, and our sister circuits have adopted its reasoning. We now do the same.") (citing *Lozada*, *Henry v. INS*, 8 F.3d 426, 439 (7th Cir. 1993), and *Esposito v. INS*, 987 F.2d 108, 110-

-17-

12 (2d Cir. 1993)); *Bernal-Vallejo v. INS*, 195 F.3d 56, 64 (1ˢᵗ Cir. 1999) (citing the *Lozada*

requirements favorably in dismissing ineffective assistance claim for failure to exhaust available BIA

remedy); *Stewart v. INS*, 181 F.3d 587, 596 (4ᵗʰ Cir. 1999) (dismissing ineffective assistance claim for

failure to "properly" assert claim "to the BIA in the manner prescribed by *Matter of Lozada*"). We

agree that the general application of the *Lozada* rules is not an abuse of discretion.

We also find that the BIA did not abuse its discretion in applying *Lozada* to this case. In

particular, as to the bar discipline requirement, Lara's argument that Perez's failure to inform Lara of

the BIA's decision did not involve a "violation of ethical or legal responsibilities" is without merit.

Lara admits that Perez committed legal malpractice. The fact that legal malpractice is a tort indicates

that there is a "legal responsibility" to avoid it. Given the plain language of *Lozada*, as well as its

obvious intent, Lara's claims involved a violation of legal responsibilities, such that the bar discipline

requirement was applicable.

That said, *Lozada* does not absolutely require that a disciplinary complaint be filed. Rather,

a reasonable explanation can excuse the failure to file a complaint. *See Lozada*, 19 I & N Dec. at 639;

*Rivera*, Int. Dec. 3296. Lara has not shown that the BIA abused its discretion in finding that Lara did

not sufficiently explain his failure to file a complaint. First, in *Rivera*, the BIA rejected petitioner's

similar contention that her statement that her counsel's error was "inadvertent" was a sufficient

explanation for failure to file a disciplinary complaint. *See Rivera*, Int. Dec. 3296. While Lara, in the

motion for reconsideration, provided a more thorough argument, the BIA's decision was consistent

with *Rivera*. Second, the BIA's fear that Lara's argument would eviscerate the bar complaint

requirement is not without foundation. Under Lara's formulation, the BIA would be required to

investigate the relevant state disciplinary law underlying each failure to file a complaint. This would

defeat the administrative-efficiency rationale underlying the requirement and in fact force the BIA into additional legal realms in which it lacks expertise. Moreover, the circumstances constituting Perez's ineffective assistance are not exceptional. If ineffective assistance based on simple inadvertence was enough to escape the bar discipline requirement in most or all cases, depending on the applicable state law, the requirement would lose much of its applicability. The important goals served by the bar discipline requirement, and the fact that it has been repeatedly endorsed by other courts, caution against this outcome. Finally, much of Lara's argument is based upon the contention that a disciplinary grievance against Perez would have been frivolous, but Lara has not established this premise.[11] Under the circumstances, Lara has not shown the BIA abused its discretion in finding insufficient his explanation for failing to file a grievance against Perez.[12]

_____

[11] Rule 1.01 of the Texas Rules of Professional Conduct forbids a lawyer from "neglect[ing] a legal matter entrusted to the lawyer." *See* Tex. Rul. Prof. Conduct 1.01 (1999). In claiming that a grievance against Perez would have been frivolous, Lara relies entirely on the statement in the comments to this Rule that "a lawyer who acts in good faith is not subject to discipline, under those provisions for an isolated inadvertent or unskilled act or omission, tactical error, or error of judgment." This statement is insufficient to show that a grievance against Perez would have been frivolous. The same comments state that "a lawyer is subject to discipline for neglecting a particular matter." They add that, "in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed." In this case, Lara alleges just such an "extreme" instance of neglect, by which Lara lost entirely his opportunity to appeal the BIA's decision affirming his final deportation order. By Lara's own characterization, Perez was ineffective under the "high standard" the BIA applies to claims of ineffective assistance of counsel. *Lozada*, 19 I & N Dec. at 639; *see also id.* at 638 (reopening based on ineffective assistance of counsel is predicated on its constituting a deprivation of due process). Accepting these circumstances alleged by Lara, a non-frivolous grievance could have been filed. First, considered in context, the "isolated inadvertent act or omission" statement arguably refers to minor errors, as opposed to breaches of duty sufficiently egregious to constitute "constitutionally" inadequate assistance of counsel. Second, Perez's was not an isolated error within the context of a proceeding, but rather precluded Lara entirely from pursuing an appeal. Given the egregious nature and severe consequences of Perez's alleged misconduct, Lara has not shown that a grievance would have been frivolous.

[12] While we do not rely upon the point, we are further disinclined to reverse the BIA because Lara only attempted to provide a satisfactory explanation for his failure to file a bar

-19-

We therefore hold that the BIA did not abuse its discretion in denying reconsideration of Lara's motion to reopen his deportation proceedings based on ineffective assistance of counsel.[13]

IV.

We therefore VACATE the district court's grant of Lara's § 2241 petition and REMAND with instructions to dismiss the petition for lack of jurisdiction. We AFFIRM the BIA's denial of reconsideration of its denial of reopening of Lara's deportation proceedings.

_____

complaint and to include the relevant agreement with his counsel *on reconsideration*. Lara's cursory motion to reopen reflects both an awareness of the *Lozada* requirements and a complete failure to attempt to comply with them or to provide a satisfactory explanation for not doing so. The fact that Lara's counsel also asked for extra time to make the relevant filings, then failed to do so, does not help either. The BIA properly denied the motion to reopen, and Lara did not appeal. It was only on reconsideration that Lara either complied with, or attempted to provide a sufficient explanation for his decision not to comply with, each of the *Lozada* requirements. There is no apparent reason why this could not have been done in the original motion. If motions to reopen are disfavored for the same reasons as denials of rehearing, *see Doherty*, 502 U.S. at 323, then this sort of motion for reconsideration of a denial of reopening must be doubly disfavored. *Cf. Lowry v. Bankers Life and Cas. Retirement Plan*, 871 F.2d 522, 525 (5th Cir. 1989) (Fifth Circuit will not consider arguments raised for the first time on rehearing unless they could not have been raised earlier).

[13]     As discussed above, Lara also filed a "supplemental points and authorities" with his motion to reconsider in which he requested reopening to apply for adjustment of status. Lara apparently claimed that adjustment had become available to him when his wife obtained U.S. citizenship in October 1997. The BIA did not abuse its discretion in classifying Lara's supplemental filing, seeking new relief not formerly available, as a motion to reopen. *See Varela v. INS*, 204 F.3d 1237, 1239 n. 4 (9th Cir. 2000). A motion to reopen is the motion used to present new facts not already in evidence. *See id.*; *Mamoka v. INS*, 43 F.3d 184, 188 (5th Cir. 1995). Nor did the BIA abuse its discretion in denying Lara's motion on the ground that a petitioner can only file one motion to reopen. 8 C.F.R. § 3.2(c) expressly states that a petitioner may only file one motion to reopen deportation or exclusion proceedings. *See* 8 C.F.R. § 3.2(c)(2) (1997); *Saiyid v. INS*, 132 F.3d 1380, 1385 (11th Cir. 1998).