United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 22, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

Nos. 01-60184

NASIRU UBA ALHADJI,

Petitioner,

VERSUS

JOHN ASHCROFT,
UNITED STATES ATTORNEY GENERAL

Respondent.

On Petition for Review of an Order of
the Board of Immigration Appeals

(INS No. A71-876-298)

Before BENAVIDES and DENNIS, Circuit Judges, and WALTER[*],
District Judge.

DENNIS, Circuit Judge:[**]

Petitioner Nasiru Uba Alhadji requests review of two Board of

Immigration Appeals ("BIA") decisions ordering his deportation. He

---

[*]District Judge of the Western District of Louisiana, sitting
by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

seeks to remain in the United States because he is now married to a U.S. citizen and because he is eligible for asylum.  For the following reasons, we DENY the petitioner's request for relief.

## I.  Background

Alhadji, a native of Cameroon, arrived in the United States on January 15, 1994, with a visa granting him permission to remain in the United States until July 15, 1994.  After staying past this date, he was placed in deportation proceedings for being in the United States without authorization.  In hearings before the Immigration Judge ("IJ"), Alhadji admitted that he was deportable because he lacked authorization to remain in the United States, but requested political asylum, or alternatively, to be able to depart voluntarily.  On March 2, 1995, the IJ denied his request for asylum, but allowed voluntary departure.  Alhadji timely appealed this decision to the BIA.

On September 13, 1997, while his BIA appeal was still pending, Alhadji married Pamsie Willis, a native-born U.S. citizen.  Because they were now married, Alhadji and his wife sought a change in Alhadji's status from alien to permanent resident.  To change status based on marriage to a U.S. citizen, the alien and his wife must file certain forms.  An alien seeking permanent resident status must file an I-485 Application to Register Permanent Residence or Adjust Status.  In addition, the U.S. citizen to whom the alien is married must file a I-130 Petition for Alien Relative

2

form to establish the marital relationship.

The Alhadjis, then living in Toledo, Ohio, filed the required I-485 and I-130 forms with the Cleveland, Ohio INS office on October 15, 1997. But because the BIA appeal was still pending, INS regulations required that the I-485 form be submitted to the BIA, not the regional INS office. On January 13, 2001, the Cleveland office informed Alhadji that his I-485 application was denied for lack of jurisdiction. But the INS did approve his wife's I-130 form, although it did not notify her until April 25, 2001.

On January 29, 2001, the BIA affirmed the IJ's ruling, denying Alhadji's appeal of the asylum claim, but granting his request for voluntary departure. The BIA ordered him to depart within thirty days of the ruling. On February 28, 2001, the last day to depart voluntarily, Alhadji filed his petition for review with this court. He also filed a stay of deportation pending our review of his petition, which we granted on April 11, 2001.

On April 27, 2001, Alhadji properly filed the approved I-130 form and a new I-485 form with the BIA. He concurrently filed a motion with the BIA seeking to reopen his case because he was now married to a U.S. citizen and because political circumstances in Cameroon had deteriorated since the IJ's ruling. On August 31, 2001, the BIA denied his motion to reopen because his failure to voluntarily depart by February 28, 2001 statutorily barred the BIA

3

from considering his change in status. It also denied Alhadji's motion to reopen because the additional evidence he produced of political conditions in Cameroon was insufficient to support a valid asylum claim. On September 26, 2001, he filed a second petition for review contesting this decision. This petition was consolidated with the one filed earlier.

## II. Analysis

Alhadji contends that the BIA incorrectly affirmed the IJ's denial of his asylum application and improperly denied his motion to reopen based on his change in status and the changed political conditions in Cameroon.[1] Concerning the BIA's refusal to consider his change in status, he argues that his failure to voluntarily depart should not bar consideration of this claim because: (1) the voluntary departure period was equitably tolled due to the INS's failure to timely process his change of status application; (2) the voluntary departure period was tolled when he filed his initial petition for review; (3) the INS should have reinstated voluntary

---

[1] Additionally, Alhadji requests that we exercise our own power to reinstate voluntary departure if we do not find that the BIA erred in denying relief. This court has not yet decided if we have the ability to reinstate voluntary departure. But because he waited until the last day of the voluntary departure period to file his petition for review and there is no evidence in the administrative record that he requested an extension of the voluntary departure deadline from the INS district director, we are foreclosed by circuit precedent from even considering this relief. *See Faddoul v. INS*, 37 F.3d 185, 192 (5th Cir. 1994); *Farzad v. INS*, 808 F.2d 1071, 1072 (5th Cir. 1987).

4

departure when it denied his motion to reopen; and (4) the INS should have exercised its *sua sponte* authority to reopen his case. As for the asylum claim, Alhadji argues that the BIA erred because: (1) he had established a well-founded fear of political persecution at the IJ hearing and (2) the changed political conditions in Cameroon since the IJ hearing warranted a grant of asylum. The government challenges Alhadji's arguments and further contends that we lack jurisdiction to consider his reasons for failing to voluntarily depart because they were not raised in his motion to reopen.

A. *Jurisdiction*

Before considering the merits of Alhadji's claims, we must first determine if we have jurisdiction. "An order of deportation ... shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." INS § 106a(c), 8 U.S.C. § 1105a(c)(repealed).[2] The administrative remedies available to Alhadji include a motion to reopen. *See Wang v.*

---

[2] Because Alhadji was placed in deportation proceedings before April 1, 1997, and his BIA appeal was denied after October 31, 1996, the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") apply. *See Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 n.4 (5th Cir. 2001). When there is a gap in the transitional rules, the now-repealed Immigration & Naturalization Act ("INA") will apply. *See Rodriguez-Silva v. INS*, 242 F.3d 243, 246 (5th Cir. 2001).

*Ashcroft*, 260 F.3d 448, 452-53 (5th Cir. 2001). However, we will retain jurisdiction if the petitioner alleged facts sufficient to support the claim. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001). Therefore, if Alhadji has not raised a claim or facts sufficient to support a claim in his motion to reopen, we cannot review that claim.

Alhadji's motion asked the BIA to reopen its proceedings and withhold deportation because: (1) he was now eligible for a change in status because his wife's I-130 form had been approved; (2) the political conditions in Cameroon had deteriorated since the initial IJ hearing; and (3) the INS was equitably estopped from challenging the motion due to its failure to timely process his change in status application as this directly prevented him from requesting relief sooner. Despite these arguments, Alhadji's motion does not provide any basis for excusing his failure to leave the United States by the voluntary departure deadline.

Based on the last argument in his motion, Alhadji has sufficiently exhausted his claim that the INS's actions excused his failure to voluntarily depart. He argued in his motion that the INS is equitably estopped from challenging the reopening of the proceeding due to its alleged misconduct. This claim is akin to his current argument on appeal, which contends that the voluntary departure period was equitably tolled because the INS's actions

6

prevented him from timely completing his application for a change in status. Both claims allege that the BIA should excuse his inability to seek an adjustment in status earlier and consider his application due to the INS's actions. Because both arguments rely on the same facts and contest essentially the same issue, we find that Alhadji raised the current claim in his motion to reopen. Consequently, he has administratively exhausted this claim and we may consider it on appeal.

However, Alhadji has failed to exhaust his other arguments concerning voluntary departure. His motion to reopen neither discusses nor mentions any other arguments for circumventing the voluntary departure deadline. In his motion, Alhadji failed to argue that (1) the voluntary departure period was tolled when he filed his petition for review, (2) the INS should reinstate voluntary departure if it denied the motion, or (3) the INS should exercise its *sua sponte* authority to reopen the proceedings.[3] Because Alhadji has failed to exhaust his administrative remedies as to these claims, we cannot review them on appeal.

---

[3] It may seem counter-intuitive to require a petitioner to exhaust his remedies with regard to the BIA's *sua sponte* power when the BIA is, by definition, acting "on its own motion." But we have previously held that "[w]hile an agency *may* act upon its own motion, a party that seeks to challenge on appeal for failure to act *sua sponte* must sufficiently raise the issue in the first instance before the agency." *Wang*, 260 F.3d at 453. Therefore, Alhadji was required to raise this issue in his motion to reopen.

7

B.    *Change of Status*

Next, we consider the merits of Alhadji's claim that his voluntary departure deadline was equitably tolled due to the INS's actions. The BIA denied his motion to reopen because it was statutorily barred from considering his change in status because Alhadji did not leave the United States by the voluntary departure deadline. We review the BIA's denial of a motion to reopen using a highly deferential abuse of discretion standard. *Lara v. Trominski*, 216 F.3d 487, 496 (5th Cir. 2000).

Alhadji argues that his failure to voluntarily depart was directly caused by the INS's actions. Specifically, he alleges that the INS's failure to timely approve his wife's I-130 form and to inform him that his I-485 form was improperly filed created an unreasonable delay. He maintains that this delay constitutes an exceptional circumstance sufficient to toll the voluntary departure deadline.

Section 242b(e)(2)(A) of the INA provides:

Any alien allowed to depart voluntarily under 244(e)(1) or who has agreed to depart voluntarily at his own expense under Section 242(b)(1) who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful reenter, respectively.

INA § 242b(e)(2)(A), 8 U.S.C. § 1252b(e)(2)(A) (repealed). The relief that is proscribed by a failure to voluntarily depart

8

includes adjustments of status. *Id.* § 242b(5)(C), 8 U.S.C. § 1252b(5)(C)(repealed). For purposes of the voluntary departure provisions, "[t]he term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." *Id.* § 242b(f)(2), 8 U.S.C. § 1252b(f)(2)(repealed). Therefore, the question is whether the INS's actions created exceptional circumstances beyond Alhadji's control. We find that they did not.

First, no exceptional circumstance prevented Alhadji from voluntarily leaving the United States. The examples of exceptional circumstances listed in the statute concern strong physical or moral reasons for remaining in the United States. Less compelling circumstances do not warrant relief. Therefore, exceptional circumstances are limited to situations when a person is unable to leave, not when that person merely chooses not to leave. *See Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir. 1999)(requiring an alien to show that he was unable, not unwilling, to comply with the departure deadline). The INS's actions did not physically or morally prevent Alhadji from leaving. He simply chose to stay while he attempted to have his status adjusted. However, under the statute, his failure to voluntarily leave precludes him from receiving that desired result. Consequently, the INS's actions do not constitute an exceptional circumstance sufficient to toll the

9

voluntary departure deadline.

Second, even if the administrative problems were an exceptional circumstance, they were not beyond Alhadji's control. The primary reason Alhadji was unable to change his status prior to the voluntary departure deadline is because he improperly filed his I-485 form with the Cleveland office. The INS regulations state:

> An alien who believes he or she meets the eligibility requirements of section 245 of the Act ...shall apply to the director having jurisdiction over his or her place of residence unless otherwise instructed in 8 CFR part 245, or by the instruction on the application form. After an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act ...shall be made and considered only in those proceedings.

8 C.F.R. § 245.2(a)(1). Therefore, Alhadji needed to file his I-485 form with the BIA who was handling his appeal, not the Cleveland INS office. Further, Alhadji learned of the misfiling in January 2001, almost six weeks before the voluntary departure deadline. Yet he did not re-file his I-485 application with the BIA until April 2001, almost two months after the deadline had passed. Finally, even though Alhadji made numerous efforts to follow up on his change of status application after the BIA denied his appeal, there is no evidence that he made any effort to track the status of his application for the two years prior to the BIA's decision. Although this does not excuse the INS's failure to timely process Alhadji's and his wife's applications, the INS's

10

failure does not constitute exceptional circumstances that were beyond Alhadji's control. Therefore, Alhadji's voluntary departure deadline was not tolled, and the BIA did not abuse its discretion in denying his motion to reopen.

C.    *Asylum Claim*

Alhadji's remaining claims concern his application for asylum. He contests both the BIA's finding that the IJ properly denied his request for asylum and its failure to grant asylum on his motion to reopen due to deteriorating political conditions in Cameroon. We will uphold the initial BIA decision on asylum if supported by reasonable, substantial, and probative evidence on the record considered as a whole. INA § 106(a)(4), 8 U.S.C. § 1105a(a)(4) (repealed); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We will reverse only if the evidence presented was such that a reasonable fact finder would have to conclude that the requisite fear of persecution existed. *Id.* The BIA's decision to deny reopening will be disturbed only if the BIA abused its discretion. *Lara*, 216 F.3d at 496.

Asylum may be granted to an alien who is a refugee. INA § 208(a), 8 U.S.C. § 1158(a)(repealed). A "refugee" is defined as an alien who is unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 101(a)(42)(A), 8 U.S.C.

11

§ 1101(a)(42)(A). Here, Alhadji alleges persecution on account of his political opinion.

In initially reviewing his asylum claim and affirming the IJ's decision, the BIA considered Alhadji's testimony from the IJ hearing, reports from the State Department and other international organizations on political conditions in Cameroon, as well as other documentation, including a summons to appear at a police station[4] and a medical certificate showing that he had been physically assaulted after a political rally. Alhadji's testimony, as supplemented by the above documentation, proved the following: (1) in 1984, Alhadji and his family were arrested in retribution for his uncle's political activities; (2) from 1984 to 1990, there were no incidents of harassment; (3) Alhadji was a member of a student organization, the Student Democratic Front ("SDF"), which protested political conditions and was involved in protests and distributing pamphlets; (4) in 1990, Alhadji was arrested for participating in a protest rally that had not received a demonstration permit; (5) after this arrest, Alhadji was in prison for three weeks and was physically assaulted by prison authorities; (6) he was arrested a few other times before leaving Cameroon for similar demonstrations, although he was released each time upon posting bail; (7) he was allowed to travel abroad; (8) he attended school in Germany for at

---

[4] While testifying at the IJ hearing, Alhadji conceded that this document was not an arrest warrant.

12

least two years before coming to the United States; and (9) he is still a member of the U.S. branch of the SDF, but has not been actively involved with the organization.  The IJ found Alhadji's testimony and evidence credible.  In addition, the reports from the State Department and other international organizations documented incidents of human rights violations related to demonstrations in Cameroon.  But the State Department also noted that despite these occurrences, large and active opposition groups were still able to operate within the country.

The BIA found the above information did not establish that Alhadji had either suffered past persecution or had a well-founded fear of persecution in the future on account of his political opinion if he returned to Cameroon.  Although acknowledging some of the political problems in Cameroon, the BIA discounted the 1990 arrest because no permit was obtained prior to the demonstration and because the arrest appeared based on crowd control, not because of any expressed political views.  The Board also noted that Alhadji's freedom to travel abroad and study and the six-year absence of any adverse incidents provided proof that asylum was not warranted.  Finally, the BIA acknowledged the evidence of human rights violations in Cameroon, but found that this was insufficient to show that a person in Alhadji's position would be persecuted if he returned.

Considering the above, the BIA's finding is supported by

13

substantial evidence.  First, the 1984 event is too remote to be given significant weight considering that the six years that followed were without incident.  Second, the 1990 arrest can be characterized as a disorderly conduct charge, not a politically motivated arrest.  Third, while in Cameroon, political authorities did not prevent him from traveling and studying abroad.  Fourth, he has not been politically active since leaving Cameroon, which minimizes the chances that he will suffer any harassment upon his return.  Fifth, the reports documenting the political troubles in Cameroon do not prove that Alhadji in particular would be persecuted upon his return.  Although the physical violence that took place while he was under arrest is troubling, there is "reasonable, substantial, and probative evidence on the record considered as a whole" to support the BIA's decision.

Alhadji further argues that the Third Circuit's recent decision in *Ezeagwuna v. Ashcroft*, 301 F.3d 116 (3rd Cir. 2002), compels us to grant asylum.  Although the petitioner in that case also sought political asylum to avoid returning to Cameroon, this decision is distinguishable.  In *Ezeagwuna*, the BIA never contended that the petitioner failed to present enough evidence to support a political asylum claim.  *Id.* at 131 n. 12.  Instead, it relied on an adverse credibility determination to deny her asylum application.  When the Third Circuit held that the BIA erred because there was not substantial evidence to support this adverse

14

credibility determination, it found that the petitioner was entitled to asylum. *Id.* at 131-34. Additionally, the petitioner's accusations of persecution were more developed than Alhadji's because the harassment was more frequent, more recent, and supported with overwhelming testimony and documentation. *Id.* She was also still politically active and had an outstanding search warrant against her in Cameroon, suggesting that persecution would be imminent upon her return. *Id.* at 120-21. Therefore, the Third Circuit decision is not sufficiently analogous and does not require us to find that a reasonable fact finder must conclude that Alhadji was persecuted or possessed the requisite fear of persecution.

Finally, Alhadji claims that deteriorating conditions in Cameroon since the IJ hearing warranted reopening his proceedings to consider his asylum claim. In support of this request, Alhadji provided additional reports detailing human rights violations in Cameroon. However, this information merely affirms that the human rights concerns raised in the initial IJ hearing are still continuing. It does not prove that a person in Alhadji's position would have a well-founded fear of persecution if he returned. Therefore, we hold that the BIA did not abuse its discretion by failing to reopen the proceedings based on this additional evidence.

Because the BIA based its decision to deny asylum on substantial evidence and did not abuse its discretion in denying

15

Alhadji's motion to reopen, we DENY the petitioner's request for asylum relief.

### III. Conclusion

The BIA did not abuse its discretion in failing to reopen Alhadji's proceedings to consider his change of status because Alhadji failed to voluntarily depart within thirty days of the BIA's decision. In addition, Alhadji has not proven that he is eligible for asylum based on his fear of political persecution if he returned. Therefore, we DENY his petitions requesting relief.

Further, we ORDER that the stay of deportation pending disposition of the initial petition for review, which this Court previously granted, is lifted.

PETITIONS FOR RELIEF DENIED; STAY LIFTED