United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 28, 2005**

Charles R. Fulbruge III
Clerk

REVISED MARCH 2, 2005

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-61034

NIZAR PANJWANI,

Petitioner,

VERSUS

ALBERTO R. GONZALES, U S ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before BARKSDALE, GARZA, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Petitioner Nizar Panjwani petitions this Court to review the decision of the Board of Immigration Appeals ("BIA") denying his untimely motion to reopen his deportation proceedings. For the reasons set forth below, the petition is DENIED.

**BACKGROUND**

Panjwani, a Muslim and native citizen of India, entered the United States under a false name and using a false passport. Panjwani was charged with excludability under the Immigration and

Nationality Act ("INA") § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A) (1997); INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i)(1997), as an alien who procured admission into this country through fraud and misrepresentation.  While Panjwani conceded the charges against him, he contended that he was entitled to asylum and withholding of removal.

In May 1998, at Panjwani's first hearing on the merits of his asylum and withholding of removal claims, the immigration judge ("IJ") determined that Panjwani had not filed a timely application for asylum, and therefore denied him relief.[1]  The IJ also found that Panjwani's case did not satisfy the requirements for establishing withholding of removal.  Nevertheless, the IJ did grant Panjwani voluntary departure from the United States. Panjwani timely appealed the decision of the IJ to the BIA.  The BIA determined that while Panjwani failed to timely submit his asylum application, there were "extraordinary circumstances" that prevented him from adhering to the applicable statutory deadlines, and therefore reversed the decision of the IJ, remanding Panjwani's case to the IJ.[2]

---

[1] Panjwani, as an asylum applicant, has the burden of proving by clear and convincing evidence that he applied for asylum within one year of his arrival in the United States, or within one year of April 1, 1997, whichever is later. INA § 208(a)(2).

[2] The BIA found that Panjwani was prepared to submit his asylum application nearly two months prior to the applicable deadline, but because of erroneous instructions provided by the IJ, Panjwani submitted his application one day late.  As such, the BIA concluded that "extraordinary circumstances," as defined in 8 C.F.R. §

On remand, Panjwani presented to the IJ the merits of his asylum and withholding of removal claims. Specifically, Panjwani asserted that his native country of India was rife with violent conflict between Hindus and Muslims. Panjwani argued that because many of these conflicts ultimately resulted in the killing of Muslims at the hands of Hindus, and because many of these crimes were committed in his hometown of Bombay (and allegedly with the assistance of local police officers), he feared persecution due to his religious status as a Muslim. The IJ determined that Panjwani failed to establish eligibility for asylum and further found that Panjwani failed to carry the heavier burden of demonstrating his entitlement to withholding of removal. Again, however, Panjwani was granted voluntary removal to leave the United States. Panjwani then filed a notice of appeal with the BIA.

The BIA ultimately determined that Panjwani failed to properly file a brief or statement in connection with his notice of appeal pursuant to 8 C.F.R. § 1003.1(d)(2)(i)(E)(2003).[3] Panjwani then

208.4(a)(5), excused the untimely nature of Panjwani's application.

[3]Section 1003.1(d) provides in relevant part:
(2) *Summary dismissal of appeals*—(i) *Standards*. A single Board member or panel may summarily dismiss any appeal or portion of any appeal in any case in which:

. . .

(E) The party concerned indicates . . . that he or she will file a brief or statement in support of the appeal and, thereafter, does not file such brief or statement, or reasonably explain his or her failure to do so, within the

filed a motion to reopen his case with the BIA based on alleged changed conditions that had occurred in India.[4] The BIA, however, denied Panjwani's motion, noting that it had been filed out of time under 8 C.F.R. § 1003.2(c)(3)(ii)(2003) and concluding that Panjwani had not satisfied the regulatory exception for the late filing. Panjwani timely filed the instant appeal.

## DISCUSSION

### I. Whether this Court has appellate jurisdiction to review Panjwani's untimely motion to reopen his deportation proceedings.

Although not an issue initially raised by either party, this panel requested the parties to brief whether this Court, under the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 ("IIRIRA"), has jurisdiction to review the BIA's denial of Panjwani's untimely motion to reopen. Generally, this Court has jurisdiction to review appeals of deportation proceedings under § 106 of the INA, 8 U.S.C. § 1105(a) (1994), as amended by § 309(c)(4) of IIRIRA. Requena-Rodriquez v. Pasquarell, 190 F.3d 299, 303 (5th Cir. 1999). IIRIRA's transitional rules generally apply

---

time set for filing . . . .

8 C.F.R. § 1003.1(d)(2)(i)(E)(2003).

[4] "A motion to reopen seeks fresh consideration on the basis of newly discovered facts or a change in circumstances since the [initial] hearing, or solicits an opportunity to apply for discretionary relief." Goonsuwan v. Ashcroft, 252 F.3d 383, 386 (5th Cir. 2001)(citation omitted).

4

to deportation cases commenced before IIRIRA's general effective date of April 1, 1997, and where the BIA's final order of exclusion or deportation was entered on or after October 30, 1996. See IIRIRA § 309(c)(1), (4), 110 Stat. 3009-625, 625-27; see also Lopez De Jesus v. INS, 312 F.3d 155, 158 (5th Cir. 2002). Because Panjwani's deportation proceedings commenced in March 1997, and the BIA order made the subject of this appeal was entered in November 2003, Panjwani's case is governed by IIRIRA's transitional rules.

Under § 309(c) of IIRIRA, this Court has jurisdiction to review a BIA decision under § 106(a) of the INA, 8 U.S.C. § 1105a (1994), unless a specified exception applies. The specified exceptions preclude judicial review of, inter alia, "any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of the enactment of the [INA])." IIRIRA § 309(c)(4)(E), 110 Stat. 3009-626.

The Government argues the untimely filing of a motion to reopen restricts the scope of this Court's review. Specifically, the Government contends that because an alien is required to exhaust his available administrative remedies before seeking review of a deportation order, 8 U.S.C. § 1105a(c) (1994),[5] the failure to

---

[5]The former section 1105a provided, in pertinent part:
(c) **Exhaustion of administrative remedies or departure from United States; disclosure of prior judicial proceedings**
An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration

do so deprives this Court of jurisdiction over the underlying claims. The Government correctly observes that the relevant federal regulations require a party to file a motion to reopen "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). Panjwani's motion to reopen was filed 92 days after the order of deportation was entered, and therefore, according to the Government, Panjwani failed to exhaust his administrative remedies, thus precluding this Court's review of the BIA's final order.

Panjwani maintains this Court has jurisdiction over his appeal, notwithstanding the untimely nature of his motion to reopen. Panjwani argues the regulations specifically provide an exception in these precise circumstances, noting that motions to reopen based on changed country conditions in the country of nationality or deportation are considered timely filed even though such a motion was filed outside the 90-day limit. See INA § 240(c)(6)(C)(ii), 8 U.S.C. § 1229a(c)(6)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii) (providing that petitioner must establish that evidence of such changed conditions is "material and was not available and could not have been discovered or presented at the

---

laws and regulations or if he has departed from the United States after the issuance of the order. . . .

8 U.S.C. § 1105a(c) (1994).

previous hearing"). Panjwani contends he presented the BIA with sufficient evidence establishing changed country conditions in India, thus satisfying the exception, which, in turn, made his motion to reopen timely.

Panjwani further suggests that were we to conclude we lack appellate jurisdiction to review his appeal, this Court would essentially cut off review in all situations where: (1) a petitioner argues that the "changed country conditions" exception expressly provided for by the regulations transforms an untimely motion to reopen into a timely one; and (2) the BIA subsequently rejects that argument. To so conclude, argues Panjwani, would lead to a result not intended by Congress when it enacted IIRIRA, which by its terms contemplates Fifth Circuit review of "final orders of deportation." See 8 U.S.C. § 1105a(a) (1994).

The jurisdictional issue before us is one of first impression in this Circuit. While this Court has previously determined that we have jurisdiction under IIRIRA's transitional rules to review the BIA's denial of a petitioner's timely motion to reopen deportation proceedings, Lara v. Trominski, 216 F.3d 487, 495-96 (5th Cir. 2000), we have only peripherally explored the bounds of this Court's jurisdiction to review the denial of a motion to reopen deportation proceedings when such a motion is untimely.

For instance, in Wang v. Ashcroft, 260 F.3d 448 (5th Cir. 2001), the petitioner filed an untimely motion to remand. The petitioner argued that the BIA abused its discretion by not

7

exercising its power under 8 C.F.R. § 3.2(a) to reopen his case upon its own motion.[6] Id. at 452. The court first set out to decide whether the petitioner failed to exhaust his administrative remedies by not requesting the BIA to exercise its authority under § 3.2(a). The court observed that section 106(c) of the INA "states that unless an alien exhausts his available administrative remedies, the deportation order shall not be reviewed by any court." Id. (citing 8 U.S.C. § 1105a(c) (1994)). The court in Wang noted that an alien's failure to exhaust such remedies serves as a jurisdictional bar to consideration of the issue. Id. The court concluded, therefore, that by not taking the initiative to implore the BIA to review the untimely motion to remand, the petitioner "fail[ed] to exhaust his administrative remedies with respect to an issue when the issue [was] not raised in the first instance before the BIA – either on direct appeal or in a motion to reopen." Id. at 452-53 (citing Goonsuwan, 252 F.3d at 388-89).

---

[6] Section 3.2, **Reopening or reconsideration before the Board of Immigration Appeals**, provides:
  (a) General. The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. A request to reopen or reconsider any case in which a decision has been made by the Board, which request is made by the Service, or by the party affected by the decision, must be in the form of a written motion to the Board. The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

8 C.F.R. § 3.2(a) (1997).

The petitioner in Wang argued that because the BIA is empowered to act *sua sponte* to reopen a deportation case, this Court necessarily has jurisdiction to review the BIA's decision not to so act under an abuse of discretion standard of review. Id. at 451. The Wang court disagreed, concluding that while courts and agencies have a "full panoply" of powers which they may invoke *sua sponte*, a party seeking to challenge on appeal the failure of an agency to act accordingly "must sufficiently raise the issue in the first instance before the agency." Id. at 453. As such, the Wang court held, because the petitioner did not argue before the BIA that there were exceptional circumstances warranting the exercise of the BIA's *sua sponte* power to reopen the proceedings, this Court was without jurisdiction to consider the issue on appeal. Id. The court in Wang further noted, in a footnote, that:

> The [BIA]'s decisions indicate that an untimely motion to reopen will be considered only if there are exceptional circumstances. A petitioner seeking to have the BIA act upon its own motion should therefore accompany an untimely motion with an explanation of the exceptional circumstances that justify reopening the case. **If the Board then finds that the petitioner's claim does not satisfy its "exceptional circumstances" standard, this Court could then decide its jurisdiction to review the decision for an abuse of discretion**. We are not faced with such a situation here.

Id. n.4 (emphasis added) (internal citations omitted).

While Wang is distinguishable from the instant case because we are not dealing with the BIA's failure to *sua sponte* reopen Panjwani's deportation proceeding, it is clear that we are

9

presented with the precise jurisdictional determination contemplated by the <u>Wang</u> Court in the above footnote.

In <u>Enriquez-Alvarado v. Ashcroft</u>, 371 F.3d 246 (5th Cir. 2004), the critical issue was whether the petitioner exhausted his administrative remedies by filing his petition for review within the relevant statutory deadline provided for by the Nicaraguan and Central American Relief Act of 1997 ("NACARA"). <u>Id.</u> at 248 (noting that NACARA required a motion to reopen under NACARA be filed no later than September 11, 1998). The court noted that 8 U.S.C. § 1252(d) provides that an alien may seek review of a removal order only if they have first "exhausted all administrative remedies available to the alien <u>as of right</u>." <u>Id.</u> (emphasis added). Because the petitioner failed to timely file his petition, it was concluded that such inaction deprived this Court of jurisdiction.

Again, while <u>Enriquez-Alvarado</u> may be instructive to our inquiry, it is distinguishable from the instant case. First, as the Government concedes, § 1252 is not applicable to this case, as the statute itself expressly provides that it does not apply to denials of asylum under 8 U.S.C. § 1158(a). 8 U.S.C. § 1252(a)(2)(B)(ii). Second, there is an important distinction between the statute at issue in <u>Enriquez-Alvarado</u> and the regulations governing Panjwani's motion to reopen. The Court in <u>Enriquez-Alvarado</u> correctly noted that "failure to meet a timely filing requirement for review of deportation proceedings strips a reviewing court of jurisdiction." <u>Enriquez-Alvarado</u>, 371 F.3d at

10

248 (citing Haroutunian v. INS, 87 F.3d 374, 375 (9th Cir. 1996)).

However, as with the statutory scheme at issue in Enriquez-Alvarado (NACARA), the other relevant deadlines to which this jurisdictional rule of law applies do not contain exceptions for late filing. Examples of statutory deadlines that do not contain such exceptions include an appeal from the decision of the IJ, 8 U.S.C. § 1252(b)(1), a motion to reconsider, id. § 1229a(c)(5), and, under the transitional rules of IIRIRA, which are applicable in this case, an appeal to this Court from a decision of the BIA, IIRIRA § 309(c)(4)(C), 110 Stat. 3009-626.

Conversely, a motion to reopen explicitly sets forth such an exception, providing that changed country conditions, which may occur or come to light outside the 90-day window, create a cognizable excuse for an untimely filing. See INA § 240(c)(6)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); 8 C.F.R. § 1003.23(b)(4)(i). The BIA's denial of Panjwani's untimely motion to reopen, in which it concluded that he had not met the necessary criteria under the statutory exception, is a final, appealable order over which Congress intended this Court to have the power to review. See Bronisz v. Ashcroft, 378 F.3d 632, 636-37 (7th Cir. 2004) (citing Chow v. INS, 113 F.3d 659, 663-64 (7th Cir. 1997), for its holding that "the denial of a motion to reopen is a final order independently subject to review like any other final order of deportation or removal," the denial of which is "a 'final order of deportation' within the meaning of § 309(c)(4)"); cf. Infanzon v.

11

Ashcroft, 386 F.3d 1359, 1361 (10th Cir. 2004) (noting that while appellate courts lack jurisdiction to review a motion for continuance because it is a form of discretionary relief, "[a] motion to reopen, on the other hand, is separately authorized by 8 U.S.C. § 1229a(c)(6)," and "is considered a final, separately appealable order").

Moreover, this Court has specifically rejected the Government's argument that our jurisdiction hinges on whether Panjwani exhausted his administrative remedies, i.e., by timely filing his motion to reopen. In Goonsuwan, 252 F.3d 387, the petitioner failed to file a motion to reopen his deportation proceedings prior to seeking habeas review. The relevant statutory provision, § 106(c) of the INA, provided:

> An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.

8 U.S.C. § 1105a(c) (1994) (emphasis added).

In deciding its jurisdiction over the matter, this Court first observed that the provisions of § 106(c) apply to direct appeals to this Court from orders of the BIA. Goonsuwan, 252 F.3d at 386. The Court then noted that the BIA's broad discretion to deny or grant a motion to reopen suggests that the initial filing of such a motion "cannot be characterized as a remedy available 'as of right.'" Id. at 387-88 (emphasis added). Therefore, the Court

12

concluded that a petitioner is not required to file a motion to reopen in order to satisfy the exhaustion requirement in § 106(c). Id. Therefore, Panjwani's failure to timely file a motion to reopen does not necessarily preclude this Court's review because the failure to so file is not considered a concomitant failure to exhaust one's administrative remedies.

Furthermore, in denying Panjwani's motion to reopen, the BIA specifically concluded that Panjwani failed to establish "changed circumstances" in his native country of India, and therefore his motion did not fall within the exception provided by § 1003.2(c)(3)(ii). Nowhere within the language of its order does the BIA contemplate or address Panjwani's alleged failure to exhaust his available administrative remedies – an alleged failure the Government asserts constitutes the sole reason this Court lacks appellate jurisdiction.

In sum, we conclude that we have appellate jurisdiction over the BIA's denial of an untimely motion to reopen deportation proceedings in instances where the petitioner files such a motion seeking to avail himself of the exception for "changed circumstances" under 8 C.F.R. § 1003.2(c)(3)(ii).

## II. Whether the BIA abused its discretion in denying Panjwani's motion to reopen his deportation proceedings.

Having determined that we have appellate jurisdiction in this matter, we now decide whether the BIA erred in denying Panjwani's motion to reopen by not considering the changed circumstances that

13

Panjwani asserts establishes a well-founded fear of persecution.

The BIA's denial of a motion to reopen is reviewed for abuse of discretion and its factual findings are reviewed for substantial evidence. De Morales v. INS, 116 F.3d 145, 147 (5th Cir. 1997). The Supreme Court has stated that "the tenor of the Attorney General's regulations . . . plainly disfavor[s] motions to reopen." INS v. Abudu, 485 U.S. 94, 110 (1988). And, under this deferential standard, the Attorney General's discretionary judgment as to whether to grant or deny relief is "conclusive unless manifestly contrary to law and an abuse of discretion." INA § 242(b)(4)(D).[7]

The relevant regulations provide that an alien may file one motion to reopen, provided such motion is filed within 90 days of a final order. 8 C.F.R. § 1003.2(c)(2). The BIA dismissed Panjwani's appeal on April 30, 2003, based on his failure to file a supporting brief. Panjwani filed his motion to reopen 92 days after the BIA entered its final order denying Panjwani's appeal. Panjwani contends, however, that § 1003.2(c)(3)(ii) allows a

---

[7] There are five grounds upon which a motion to reopen may be denied -- three announced by the Supreme Court and two provided for by regulation. The three independent grounds identified by the Supreme Court recognize that the BIA may: (1) "hold that the movant has not established a prima facie case for the underlying substantive relief sought"; (2) "hold that the movant has not introduced previously unavailable, material evidence"; and (3) "determine that . . . the movant would not be entitled to the discretionary grant of relief." INS v. Abudu, 485 U.S. 94, 104-05 (1988). The two additional grounds provided for by regulation include instances where a motion to reopen is untimely or where a motion to reopen exceeds the numerical limitations on motions to reopen. 8 C.F.R. § 1003.2(c)(2)(2004).

14

petitioner to file a motion to reopen <u>at any time</u> based on changed country conditions that are material to the claim and could not have been discovered or presented at the prior hearing.

Panjwani argues he established, in his motion to reopen, that country conditions in India had materially changed, and thus he has made a prima facie showing that he is entitled to asylum and withholding of removal. The Attorney General responds that the only information included in Panjwani's motion to reopen that was different from the evidence presented at his initial hearing in 2000 was Panjwani's assertion that "only last week there was a bus bombing 10 kilometers from [Panjwani]'s family's home in Bombay." As the Attorney General points out, Panjwani fails to disclose what group was responsible for the bus bombing or who was killed or injured as a result of it. While Panjwani testified before the IJ in 2000 that violence between Muslims (his religious association) and Hindus was not uncommon in India, and that he feared for his safety because of it, it seems reasonable for the BIA to have concluded that a non-specific bus bombing, without any further details, does not rise to the level of "changed circumstances." Accordingly, the BIA's refusal to reopen the proceedings based on the untimely nature of Panjwani's motion and the insufficient evidence presented therein was within the discretion of the BIA and wholly proper.

## CONCLUSION

15

Having carefully reviewed the entire record of this case and having fully considered the parties' respective briefing, we conclude that while we have appellate jurisdiction to review the BIA's denial of an untimely motion to reopen a deportation proceeding, Panjwani has failed to present material evidence establishing that he is entitled to asylum based on changed circumstances in India. Accordingly, the BIA did not abuse its discretion in denying Panjwani's motion to reopen his deportation proceedings. The petition is **DENIED**.