United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 30, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No.  04-60123

FARIDEH TORABI; MAZIAR GOSHTASEBI,

Petitioners,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

**Petition for Review from the
Board of Immigration Appeals
(A79 466 425)**

Before JOLLY and BARKSDALE, Circuit Judges, and LITTLE, District

Judge.[*]

PER CURIAM:[**]

Presently at issue is whether the Board of Immigration Appeals

(BIA) abused its discretion in denying Farideh Torabi's motion to

reopen, based on her statutory eligibility to adjust to permanent

resident status.  An alternative issue, not reached today, is

Torabi's challenge to the BIA's decision that she failed to

establish eligibility for asylum, withholding of removal, or relief

---

[*] District Judge of the Western District of Louisiana, sitting
by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

under the Convention Against Torture (CAT).  Concerning the motion to reopen, we remand for consideration of adjustment to permanent resident status.  Pending that decision, we retain jurisdiction to consider whether Torabi is entitled to relief under the other claimed bases.  **REMANDED FOR LIMITED PURPOSE.**

## I.

Torabi, a 49-year-old, is a native and citizen of Iran, as is her son, Maziar Goshtasebi, a 19-year-old.  Both entered the United States in May 2000 on temporary visas.  (Because Goshtasebi was a minor during the proceedings before the immigration judge (IJ), his claims are derivative of Torabi's.)

In April 2001, Torabi submitted an application for political asylum with the Immigration and Naturalization Service (INS); but, after being interviewed by the INS, she was found ineligible. After receiving notices to appear for removal proceedings, Torabi appeared before the IJ.  At that hearing, Torabi, her son, and Drs. Dehghani and Sadri testified regarding Torabi's applications for asylum, withholding of removal, and relief under the CAT.  The testimony was in Farsi and translated by an interpreter.

In part, Torabi offered the following evidence.  She is a Sunni Muslim, a nurse, and married to a physician. Her involvement in Iran in a women's freedom movement group led to her arrest and being taken into custody in 1990; as a result of police beatings, she suffered, *inter alia*, a miscarriage and a broken nose and

2

teeth.  After being re-arrested in 1991 for her association with a Sunni leader, she was whipped and sexually abused.  In 1994, the government forbade her from practicing nursing in both government and private hospitals because of her lack of respect for Islam. Her husband was repeatedly arrested and subjected to severe beatings.  The government threatened to take her son away from her if she continued protesting his compulsory attendance at a Shiite theology class taught at his school.

In denying relief, the IJ stated:  "During these proceedings, ... the Court carefully listened to [Ms. Torabi's] testimony and observed her demeanor.  Ms. Torabi's demeanor in and of itself did not connote a lack of truthfulness.  However, Ms. Torabi tended to embellish parts of her story".  The IJ then cited inconsistencies in her testimony.

The BIA dismissed Torabi's appeal in January 2004; voluntary departure was reinstated.  Citing a lack of corroborating evidence and possible exaggerations in Torabi's testimony, the BIA concluded that she failed to establish a well-founded fear of persecution. It also ruled that Torabi's fear of punishment for refusal to send her son to a "universally required" religious school did "not arise from being singled out on account of a protected ground".

Torabi petitioned this court for review.  Subsequently, she received an approval notice for her I-140 application, making her immediately eligible to adjust to permanent resident status under

3

the Immigration and Nationality Act (INA) § 245(I), 8 U.S.C. § 1255. Torabi informed this court of such eligibility; therefore, on 25 May 2004, our court stayed the proceedings here, pending a decision on Torabi's motion to reopen in the BIA. The BIA denied that motion as untimely.

Thereafter, Torabi filed a status report with this court on 23 June 2004, within 30 days of the BIA's order, seeking review of the motion's denial. Additionally, she filed an emergency motion to remand to the IJ based on her eligibility to adjust status, which was carried with the case by a panel of our court.

## II.

Concerning the denied motion to reopen, we first address our jurisdiction *vel non* to consider Torabi's seeking review of that denial. In doing so, we examine: whether she filed the requisite petition for review; and whether we can review the untimeliness basis for the motion's denial. Because we hold jurisdiction exists, we next consider whether the BIA abused its discretion in denying the motion; we hold that it did.

### A.

As noted, in holding that we have jurisdiction, we examine two possible bases for precluding it.

#### 1.

4

Respondent claims we lack jurisdiction to review the motion's denial because Torabi did not file a petition for review of that decision. Pursuant to 8 U.S.C. § 1252(b)(1), a "petition for review must be filed not later than 30 days after the date of the final order of removal". *See* **Giova v. Rosenberg**, 379 U.S. 18 (1964) (holding that the denial of a motion to reopen is construed as a final order of removal for purposes of an appellate court's jurisdiction). Torabi's status report, filed here on 23 June 2004, within 30 days of the denial of her motion, sought review of that denial. That report is both a constructive and timely petition for review. *See* **Tapia-Acuna v. INS**, 640 F.2d 223, 224 n.3 (9th Cir. 1981) (holding, under former statute, that a notice filed by the INS notifying the court that the BIA had issued its decision manifested clear intention of the parties to seek review of the second BIA decision and, thus, construing the notice as a second petition for review), *superseded on other grounds by statute as recognized in* **United States v. Estrada-Torres**, 179 F.3d 776, 778 (9th Cir. 1999), *cert. denied*, 531 U.S. 864 (2000).

2.

Respondent does not offer any additional challenge to our jurisdiction to review the denial of Torabi's motion. Of course, we have a duty, *sua sponte*, to determine jurisdiction *vel non*. **Mosley v. Cozby**, 813 F.2d 659, 660 (5th Cir. 1987). As discussed

*infra*, we have jurisdiction to review whether the BIA abused its discretion in denying the motion as untimely.

Under 8 U.S.C. § 1252(a)(2)(B)(i), this court is stripped of jurisdiction to review BIA final orders regarding granting of relief *vel non* under 8 U.S.C. § 1255 (allowing for adjustment of status of a nonimmigrant to that of a person admitted for permanent residence). As noted, in denying Torabi's motion, however, the BIA never reached the merits of her adjustment-of-status request under § 1255; the denial was based solely on the motion's untimeliness under 8 C.F.R. § 1003.2(c)(2). Thus, we have jurisdiction to review the denial of Torabi's motion to reopen. *See* **Medina-Morales v. Ashcroft**, 371 F.3d 520, 525-27 (9th Cir. 2004) (concluding 8 U.S.C. § 1252(a)(2)(B)(i) did *not* strip jurisdiction to review the BIA's denial of a motion to reopen because the IJ never ruled *on the merits* of the petitioner's adjustment-of-status petition under § 1255); *see also* **Panjwani v. Gonzales**, 401 F.3d 626, 632 (5th Cir. 2005) (holding that the court had "jurisdiction over the BIA's denial of an untimely motion to reopen deportation proceedings in instances where the petitioner file[d] such a motion seeking to avail himself of the [statutory] exception for 'changed circumstances'"); **Prekaj v. INS**, 384 F.3d 265, 267-68 (6th Cir. 2004) (explaining that the court had jurisdiction to review the BIA's decision not to reopen the petitioner's case); **Lara v. Trominski**, 216 F.3d 487, 496 (5th Cir. 2000) (ruling that

6

jurisdiction existed to consider whether the BIA erred in denying the petitioner's motion to reconsider its denial of his motion to reopen).

B.

The BIA's denial of Torabi's motion is reviewed for abuse of discretion. *Lara*, 216 F.3d at 496 ("[T]he abuse of discretion standard applies to motions to reopen regardless of the underlying basis of the alien's request for relief".) (quoting **INS v. Doherty**, 502 U.S. 314, 323 (1992)) (internal quotation marks omitted). We hold the BIA abused its discretion by its untimeliness basis for denial.

1.

Pursuant to regulation, *not statute*, a motion to reopen must be filed within 90 days of the date of entry of the final administrative order of removal. 8 C.F.R. § 1003.2(c)(2). The BIA's underlying decision was issued on 29 January 2004; thus, for timeliness purposes, Torabi was required to file her motion to reopen by 28 April. Torabi, however, did *not* receive notice of her eligibility to adjust status to lawful permanent resident until 3 May 2004 — a few days outside the 90-day period for timely filing. Torabi's motion to reopen was promptly filed on 12 May.

On 9 June 2004, the BIA denied the motion, explaining that, because it was outside the 90-day limit, it was "filed out of time and will be denied". Torabi asserts, however, that the motion

7

should have been considered on the merits because it was based on material evidence — her eligibility to adjust to permanent resident status — that was *not* previously available.  Torabi relies on 8 C.F.R. § 3.2(c)(1) (2003), current 8 C.F.R. § 1003.2(c)(1) (2005), which states:  "A motion to reopen ... shall not be granted unless ... [the new] evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing".

Respondent replies that 8 U.S.C. § 1252(a) prohibits our remanding the motion for consideration of new evidence under 28 U.S.C. § 2347(c) (allowing courts of appeal to order additional evidence, to be taken by the agency appealed from, where that evidence is material and there were reasonable grounds for its *not* being presented before the agency).  Other circuits have indeed interpreted earlier versions of § 1252(a) as prohibiting appellate courts "from ordering the BIA to consider evidence that is *offered for the first time on appeal*, even if such material satisfies the rigors of § 2347(c)".  ***Najjar v. Ashcroft***, 257 F.3d 1262, 1281 (11th Cir. 2001) (emphasis added); *see* ***Reyes-Melendez v. INS***, 342 F.3d 1001, 1006 (9th Cir. 2003) (holding that appellate courts are precluded "from remanding cases to the BIA for the taking of additional evidence under ... § 2347(c)").

Here, however, the evidence offered in support of the motion to reopen was *not* presented for the first time on appeal; rather,

8

it was presented with Torabi's motion to reopen.  Thus, § 1252(a) does not preclude our remanding to the BIA for consideration of Torabi's eligibility to adjust to permanent resident status.

2.

Torabi's motion was not denied because of the BIA's failure to consider this evidence, but rather was denied based on its untimeliness; therefore, we address why the BIA abused its discretion in this respect.  As urged in Torabi's status report, the harsh results of this case, in our discretion, require application of the doctrine of equitable tolling.  Under this doctrine, the BIA should have considered Torabi's motion on the merits.

Because the 90-day limitations period under 8 C.F.R. § 1003.2(c)(2) is *not* jurisdictional, the doctrine of equitable tolling may be applied.  *See* **Borges v. Gonzales**, 402 F.3d 398, 406 (3d Cir. 2005) (following the Ninth Circuit's determination to apply equitable tolling to motions to reopen, and additionally noting that "[t]he First, Second, Fourth, and Sixth Circuits have more generally considered applying, or have applied, equitable tolling to motions to reopen"); **Iavorski v. INS**, 232 F.3d 124, 132 (2d Cir. 2000) (concluding that the 90-day period to file a motion to reopen is *not* jurisdictional and thus is subject to equitable tolling); *see also* **Davis v. Johnson**, 158 F.3d 806, 811 (5th Cir. 1998) (explaining that, because the Antiterrorism and Effective

9

Death Penalty Act's time limitation period is *not* jurisdictional, the doctrine of equitable tolling could be applied in "rare and exceptional circumstances"), *cert. denied*, 526 U.S. 1074 (1999). Because the doctrine of equitable tolling "is read into every federal statute of limitation", **Holmberg v. Armbrecht**, 327 U.S. 392, 397 (1946), it is appropriate to apply the doctrine in the present case, where the 90-day period is *not* jurisdictional, but rather is a limitations period pursuant to a regulation. *See* **Lopez v. INS**, 184 F.3d 1097, 1100 (9th Cir. 1999).

On these facts, Torabi's not discovering she was eligible for permanent resident status until a few days after the 90-day deadline led to an inequitable result; thus, we hold that the doctrine of equitable tolling applies. *See* **Davis**, 158 F.3d at 810 ("The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.") (internal citation and quotation marks omitted). "We will apply equitable tolling in situations where, despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim." **Socop-Gonzalez v. INS**, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) (internal quotation marks omitted) (alteration in original) (noting that, although the court had applied equitable tolling in the past to instances of fraud and ineffective assistance of counsel, "the doctrine is by no means limited to these

10

situations"). Torabi was unable to obtain information vital to her adjustment-of-status claim because she was *not* informed of her immediate eligibility to adjust to permanent resident status until 3 May 2004, approximately five days *after* her deadline to move to reopen. She filed her motion to reopen with the BIA on 12 May, just days after receiving notice of her eligibility for adjustment of status.

Accordingly, we hold the BIA abused its discretion in refusing to toll Torabi's filing deadline so that she could present evidence of her newly granted eligibility for adjustment of status. Because Torabi's motion was denied as being untimely, the merits of her adjustment-of-status claim have not been addressed. Obviously, if Torabi is entitled to such adjustment, we need not reach the other bases on which she seeks relief. The merits of her motion should be addressed first by the BIA. Accordingly, this matter is remanded to the BIA for the limited purpose of deciding the motion to reopen on its merits. *See Asani v. INS*, 154 F.3d 719, 725 (7th Cir. 1998).

### III.

For the foregoing reasons, we **REMAND** to the BIA for the limited purpose of its considering the merits of Torabi's motion to reopen to adjust status. We retain jurisdiction; and, following such consideration, if the BIA declines to adjust Torabi's status,

11

this panel will decide whether Torabi should be granted asylum, withholding of departure, or relief under the CAT.

*REMANDED FOR LIMITED PURPOSE*