# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 7, 2012

Lyle W. Cayce
Clerk

No. 11-60407
Summary Calendar

JISHENG XIAO,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A094 907 040

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

Jisheng Xiao, a native and citizen of China, was ordered deported in 2008, and his applications for asylum, withholding, and protection under the Convention Against Torture (CAT) were denied. We denied his petition for review, concluding that "Xiao offered no support for his assertion that he would be forcibly sterilized upon returning to China." *Xiao v. Holder*, 349 F. App'x 909, 910 (5th Cir. 2009). We stated that the State Department Country Profile in evidence noted that the Family Planning Regulations of Fujian Province

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

provided that "the penalty for not meeting the population and family planning regulations is a social maintenance fee, not sterilization." *Id.*

Xiao filed a motion to reopen with the Board of Immigration Appeals (BIA), accompanied by an application for asylum, withholding, and relief under the CAT. Xiao asserted once again that he feared sterilization in China on account of his two United States citizen children. The BIA denied Xiao's motion to reopen on May 23, 2011. The BIA noted that the motion was untimely because it was not filed within 90 days of the administrative final order in his case. The BIA held that Xiao's motion failed to demonstrate prima facie eligibility for asylum because his key evidence—a letter from a village committee—was unreliable and lacked authentication and a certification of translation.

In his petition for review, Xiao argues that the BIA abused its discretion by failing to consider the evidence in the record which established that he has a prima facie fear of persecution based on changed country conditions in China. Xiao argues that the village certification is new and previously unavailable evidence of changed country conditions in China material to his claim that he fears persecution on account of his two U.S. born children. He argues that the BIA abused its discretion in finding that the village certificate was unreliable because it was unauthenticated. He contends that the BIA failed to consider multiple factors in the record relevant to the authenticity and reliability of the village certificate. He argues that because authentication of foreign documents can be established by any recognized procedure, the BIA's failure to explain why the village certificate was not authenticated by other means requires remand. He asserts that the village certification was individualized evidence which showed that he had violated the family planning policy in his village and that the violation subjected him to mandatory sterilization. Xiao also argues that the BIA's finding that the certificate was lacking a proper certificate of translation

is not supported by the record and that the BIA failed to explain why the evidence is unreliable because it was obtained for the purpose of the proceedings.

We have jurisdiction to review the denial of an untimely motion to reopen based on changed circumstances in the alien's home country. *Panjwani v. Gonzales*, 401 F.3d 626, 632 (5th Cir. 2005). We review the denial of a motion to reopen "under a highly deferential abuse-of-discretion standard," upholding the Board's decision so long as it is not capricious, racially invidious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach. *Manzano-Garcia v. Gonzales*, 413 F.3d 462, 469 (5th Cir. 2005). Motions to reopen must be "filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, the filing periods are not applicable if the motion to reopen is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." § 1229a(c)(7)(C)(ii); § 1003.2(c)(3)(ii); *Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir. 2005).

Section 287.6(b)(1) of Title 8 of the Code of Federal Regulations provides that a foreign record "shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized." Xiao does not dispute that the village certificate was not so authenticated. He seeks to establish the reliability of the document by means of his own affidavit, in which he asserted that his mother obtained the village certificate upon inquiry at the local authority. This is not an assertion made upon his personal knowledge. According to the authority cited by Xiao, *Chen v. Attorney General of U.S.*, ___ F.3d ___, 2011 WL 923353 at * 4 (3d Cir. Mar. 18, 2011), the immigration judge and BIA properly discounted the village committee notice as unauthenticated, noting that a proper

means of alternate authentication would be an affidavit from the petitioner's mother as to how the document was obtained.

The background evidence does not tend to support a finding that the village committee letter is authentic. As noted in *Matter of H-L-H & Z-Y-Z*, 25 I & N Dec. 209, 214-15 (BIA 2010), according to the State Department's 2007 Profile, which contained an October 13, 2006 letter from the Fujian Province Population and Family Planning Commission, the Village Committees "are not authorized to make any decisions pertaining to family planning issues, and that a certificate issued by such a committee should be deemed ineffective." Regarding Xiao's argument that the certificate of translation was merely misplaced in the record and the BIA ignored it, assuming that is true, the lack of authentication is sufficient in itself to discount the document, even with a proper certificate of translation.

The BIA did not abuse its discretion in determining that the village certificate was unreliable due to lack of authentication and because it was obtained for the purpose of these immigration proceedings. *See Song Wang v. Keisler*, 505 F.3d 615, 622-23 (7th Cir. 2007); *Matter of H-L-H & Z-Y-Z*, 25 I & N Dec. at 214-15. Thus, the BIA did not abuse its discretion in determining that the evidence failed to establish a prima facie case of eligibility for asylum. *See In re S-Y-G*, 24 I. & N. Dec. 247, 258-59 (BIA 2007), *petition for review denied by Shao v. Mukasey*, 546 F.3d 138, 168-69, 172-73 (2d Cir. 2008) (holding that the petitioner "had not adduced evidence that convincingly established a reasonable possibility that she would face enforcement amounting to persecution" and that "[b]ecause substantial evidence supports this determination, we identify no abuse of discretion in the denial of Show Yung Guo's motion to reopen.").

Xiao argues that the village certificate was new and previously unavailable evidence of changed country conditions material to his claim that he fears persecution on account of his two U.S. born children. Because the BIA

found that Xiao had not demonstrated prima facie eligibility for asylum, it had no need to decide whether Xiao had also presented material evidence of changed country conditions. *See Panjwani*, 401 F.3d at 632 n.7. We need not address Xiao's argument regarding changed country conditions.

Lastly, Xiao argues that the BIA failed to consider the 2008 and 2009 Annual Reports from the Congressional-Executive Commission on China, which provided a more accurate account of conditions in China than the 2007 Profile. Xiao states that he cited these reports extensively, although he admits that they are not in the record. He contends that these reports are publicly available documents issued by the Government of which the BIA may take administrative notice.

Even though the BIA may take administrative notice of such reports, Xiao points to no regulation or court decision that requires the BIA to do so. The BIA did not abuse its discretion in failing to indicate in its opinion whether or not it had considered these reports, and to the extent that it may have failed to consider them, in not taking administrative notice sua sponte of reports not in evidence. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (providing that BIA may not engage in fact finding, but may take administrative notice of commonly known facts including current events or contents of official documents); *Meghani v. INS*, 236 F.3d 843, 848 (7th Cir. 2001) (explaining that the BIA is not required sua sponte to take administrative notice of new country reports).

PETITION FOR REVIEW DENIED.